## DISTRICT OF COLUMBIA v. TOTTEN.

(Court of Appeals of District of Columbia. Submitted December 2, 1924. Decided May 4, 1925.)

### No. 4072.

1. **Municipal corporations ⬅742(5) — Exclusion of evidence showing enhanced realty in vicinity of nuisance held not error.**

In action against municipality for damages for nuisance arising from manner in which defendant constructed and maintained workhouse near plaintiff's property, exclusion of evidence to show that other realty in vicinity had been enhanced in value after establishment of workhouse was not error.

2. **Municipal corporations ⬅745½—Municipality not liable for negligence of officers performing governmental function.**

Municipality engaged in exercise of its police power and acting in performance of a governmental function is not liable in damages for negligent omissions or commissions of its officers.

3. **Municipal corporations ⬅734—Maintaining prison governmental function.**

Municipality, in maintaining prison or place of detention for prisoners, is acting in performance of governmental function.

4. **Municipal corporations ⬅736—Municipality liable for nuisance.**

Municipality so performing any function, governmental or otherwise, as to commit nuisance, is liable in damages, to one injured thereby.

5. **Nuisance ⬅7—Negligence not essential element.**

A nuisance does not necessarily grow out of acts of negligence, but may result from skillfully directed efforts taken without due regard to rights of others.

6. **Nuisance ⬅71—Ordinarily action will not lie for public nuisance.**

Ordinarily an action will not lie for damages for public nuisance.

7. **Nuisance ⬅72—Individual suffering special injury from public nuisance may sue.**

Private nuisance may still remain such, though it affects a number of individuals, and acts which create a public nuisance and also cause private and special injury to an individual are actionable at suit of latter.

8. **Nuisance ⬅1—"Nuisance" defined.**

A "nuisance" is anything that works or causes injury, damage, hurt, inconvenience, annoyance, or discomfort to one in legitimate enjoyment of his reasonable rights of person or property, or that which annoys, vexes, irritates, or is offensive or troublesome, and may exist, not only in commission, but in omission.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

9. **Municipal corporations ⬅736—Municipality held liable for nuisance caused by conduct of workhouse.**

Municipality's construction and maintenance of workhouse in close proximity to plaintiff's property in manner that prisoners constantly escaped, terrorized and annoyed plaintiff, and hindered him in conduct of his business, *held* maintenance of nuisance, for which it was liable in damages.

10. **Municipal corporations ⬅736—Individual may recover for nuisance maintained by municipality, though others may have sustained injury from same source.**

A municipality has no right to create and maintain nuisance, and if it does so act, to damage of adjacent property owner, action at law will lie for him, though others may have sustained injury from same source.

Martin, Chief Justice, dissenting.

Appeal from Supreme Court of the District of Columbia.

Action by Howe Totten against the District of Columbia. Judgment for plaintiff, and defendant appeals. Affirmed.

F. H. Stephens and R. L. Williams, both of Washington, D. C., for appellant.

H. E. Davis, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and BLAND, Judge of the United States Court of Customs Appeals.

BLAND, Acting Associate Justice. The appellee, Howe Totten, recovered a judgment in the Supreme Court of the District of Columbia against the District of Columbia, appellant, in the sum of $7,500, from which judgment appellant appeals.

The declaration charges the defendant with having maintained a nuisance as respects plaintiff in the use, occupation and enjoyment of his home. It declares that plaintiff was the owner and in possession of a certain tract of land in Fairfax county, Va., and had been in such possession for about five years prior to April 1, 1910, when the defendant began to use a neighboring and partly contiguous tract of land and to construct certain temporary structures thereon, to be used as a workhouse and place of detention for prisoners convicted of divers criminal offenses in the District of Columbia; that on or about September 1, 1910, the defendant began the erection of permanent structures and buildings for use as a workhouse and place of detention or prison; that there were about 300 prisoners detained

there; that in the defendant's said operations it left the prisoners unguarded and, without guarding officers or agents and employees to watch them, and to keep them from harming and molesting plaintiff and his family; that the control over the prisoners was lax and inefficient; that a large number of the convicts sent to the place of detention escaped; that such escaped prisoners annoyed and frightened the employees of the plaintiff as well as his family; that the escaping prisoners were dangerous; that after escaping they would approach near the plaintiff's premises in large numbers, and would trespass upon plaintiff's land; that the unguarded prisoners wandered up and down the public highway in front of plaintiff's land, near his dwelling house; that the construction was done by prisoners, and that during the early portion of said construction period there were no adequate means provided for restraining them, either in the way of suitable prison buildings or guards; that the plaintiff was required to go armed on his own premises; that on account of the conditions complained of he and his family were compelled to abandon their premises and live elsewhere, and that he was thereby deprived entirely of the comfortable enjoyment of his home as a residence, and prevented from giving the time and attention necessary for the proper care and maintenance of certain valuable and pedigreed animals, which he was breeding and raising as a business; that by the reason of these facts he suffered irreparable damage in the use and enjoyment of his premises in the particulars heretofore related, and in the depreciation of the value of his land and premises.

The proof showed that the large tract of land, consisting of several thousand acres, upon which the prison was being constructed, was covered with woods and thick underbrush; that, in clearing the woods, prisoners had easy opportunity of escaping, and did escape in large numbers; that the prisoners were not shackled, nor handcuffed, nor had leg balls or other impediments which would prevent them from escaping; that they wore striped clothes; that the prison was located on the opposite side of the river from the village of Occoquan; that plaintiff's land was within one-half mile of the railroad station of Lorton, and four miles from the village of Occoquan; that the escaping prisoners most frequently, after escaping, traveled in the direction of Washington City, and in doing so passed over or near plaintiff's premises; that escaping prisoners and pursuing guards were on his place almost daily; that

escaped prisoners broke into the tenement houses; that on account of the conditions complained of, after plaintiff moved from the premises, he could not get a tenant to live on the place rent free; that escapes from the prison were frequent and recaptures were infrequent; that the same condition applied to others owning land in the immediate neighborhood during the construction of the prison; and the evidence, we think, discloses that, on account of the frequency of the escapes of dangerous men, the entire neighborhood lived in fear and were prevented from leaving their homes and enjoying the occupancy of their premises.

The appellant assigns as error the refusal of the court to grant the motion of the defendant for a directed verdict in its behalf, and that the court erred in charging the jury to the effect that plaintiff could recover in the case on the evidence showing damages growing out of the establishment and maintenance of the workhouse and reformatory. Further assignments of error were predicated upon the refusal of the court to permit the defendant to show that the property values in and around the neighborhood of the workhouse and reformatory were enhanced by the establishment of the institution. It is also assigned as error that the court refused to grant certain instructions.

The instructions of the court, while not as clear as they should have been, in view of the allegation in the declaration that the value of the land and premises was greatly depreciated and reduced, we think reasonably and fairly confines the recovery of damages to those sustained by the plaintiff on account of his being deprived of the enjoyment of the use of his premises, on account of a nuisance maintained by the defendant in the manner in which it attempted to perform the function of keeping prisoners and using prison labor to build the prison in which to keep them. While the jury may have concluded that the market value of plaintiff's land had been greatly reduced, and while the admission of certain excluded testimony as to the market value of certain adjacent real estate might have removed this impression from the minds of the jury, we think the instructions, as a whole, tended to remove any such impression. The record does not disclose any attempt on the part of the defendant to have the declaration as to the reduced value of the real estate stricken from plaintiff's declaration, nor do we find any objection interposed, or motions to strike out of the evidence statements of witnesses tending to show depreciation in value.

[1] We find no reversible error in the instructions given by the court, or in its refusal to give instructions offered by the defendant. Under the circumstances, it was not reversible error for the court to refuse to permit the defendant to show the enhanced value of real estate around the neighborhood of the workhouse after its establishment.

The two questions raised by the appellant are stated, in its brief, as follows: "(1) Is the District of Columbia exercising a governmental function in the operation and maintenance of its workhouse and reformatory located at Occoquan, Va.; and, if this be answered in the negative, (2) were the workhouse and reformatory so maintained and operated by the District of Columbia during the period of time complained of by the appellee as to constitute an actionable nuisance?"

[2] There are few questions upon which the courts have passed that are so hopelessly in conflict and so unsatisfactorily settled as the question as to when a municipality is performing a governmental function. The rule is unmistakably laid down in numerous very respectable and apparently well-reasoned authorities that a municipality, while engaged in the exercise of its police power and acting in the performance of a governmental function, is not liable to answer in damages for the negligent omissions or commissions of its officers which result in damages to an individual.

While the decisions do not definitely nor satisfactorily settle the question as to just what acts a municipality may do in the performance of a governmental function without liability for the negligence of its servants and officers, we recognize that there has been a long-continued effort on the part of the courts to differentiate between acts done in the performance of a governmental function carrying out a legislative mandate, and those acts which are frequently referred to as municipal acts or the exercise of corporate powers. The difference seem to rest in the fact that in the first instance the municipality is performing the mandate of the Legislature as related to a public duty generally, and in the other instance it is related only to the exercising of its private rights as a corporate body.

[3] Unquestionably the authorities agree that the conduct of a prison for the retention of criminals who prey upon society generally is the performance of a governmental function, in which the public generally is concerned, and in which the police power of the state is exercised. So, as far as the case at bar is concerned, leaving out the question of the authority of the District of Columbia to establish a prison outside of the District under a special act of Congress, we feel that we are well supported by the great weight of authority in holding that the acts of the District in actually maintaining a prison for the retention of prisoners is the performance of a governmental function. District of Columbia v. Tyrrell, 41 App. D. C. 463; Brown v. District of Columbia, 29 App. D. C. 273, 25 L. R. A. (N. S.) 98; Coates v. District of Columbia, 42 App. D. C. 194; Jones v. District of Columbia, 279 F. 188, 51 App. D. C. 319. (It will be noted that these cases apply the doctrine of governmental function in cases involving negligence.)

It may also be asserted, with reasonable assurance of verity, that the courts generally hold that a municipality is not liable for damages to an individual who is injured by the negligence of a servant, officer, or employee of the municipality while it is engaged in the performance of a governmental function.

[4] Where the municipality, in its attempts to perform a governmental function, so performs as to commit a nuisance from which an adjacent landowner is damaged in the enjoyment of his ownership, he may have an action for damages. Palmer v. District of Columbia, 26 App. D. C. 31, 1 L. R. A. (N. S.) 878; Roth v. District of Columbia, 16 App. D. C. 323. In Palmer v. District of Columbia, supra, a judgment was rendered against the Public Printer for the violation of the smoke law in the District of Columbia. The court held that, regardless of whether he was performing a governmental function or not, he was amenable to the law for creating a nuisance. The court said:

"It might have availed a defendant even in the days of personal government in England, when the infamous maxim was in force that the king could do no wrong, and his officers were shielded by his privilege. But we cannot see how, in our country, and in this age and generation, a public official, charged with the commission of a public nuisance, which the legislative power of the state has endeavored most rigidly to prohibit, can protect himself by the claim that in the performance of the act he represents the state. We have held, in the case of Roth v. District of Columbia, 16 App. D. C. 323, that the municipality, even in the course of

its performance of its governmental functions, is not entitled to perpetrate a nuisance. And the same rule will apply still more strongly to the executive officers of the government, whose duty it is to execute and obey the laws, not to violate them."

In Roth v. District of Columbia, ·supra, this court said:

"The mere maintenance or location of an ambulance stable, although possibly annoying and inconvenient to the residents of a neighborhood, may not of itself be held to be a nuisance, since it is a necessary and proper appliance of governmental authority; but the negligent, improper, and unlawful manner of its maintenance, which is the thing of which complaint is here made, is not warranted by any requirement of governmental duty, and is, on the contrary, directly antagonistic to the demands of such duty. That the District of Columbia is liable for the existence and maintenance of this nuisance, if nuisance there is, which of course remains to be established, seems to us to be very plain. * * * Some argument has been based upon the theory that a municipality cannot be held liable at the suit of a private person for the failure to perform a public duty, when it receives no profit or special advantage to itself from the performance of such public duty. But the matter of profit or absence of profit has no place in the present case. A municipality owning property stands in no different position from a natural person in respect of the duty not to permit it to become a nuisance. It would be strange indeed if the question of the liability of a municipality for a nuisance committed or permitted by it upon its own property to the detriment of the neighborhood were dependent upon the amount of gain derived by it from the existence of the nuisance. As we have said, the municipality is not in the performance of any public duty, but rather in the violation of its public duties, when it permits the maintenance of a nuisance upon its property."

The following authorities sustain the general principle that a municipality, regardless of the kind of function it may be exercising, is liable in damages to one who has been injured by the commission of a nuisance by the municipality: Brower v. Mayor of N. Y., 3 Barb. (N. Y.) 254; City of New Albany v. Slider, 21 Ind. App. 392, 52 N. E. 626; Clayton v. City of Henderson, 103 Ky. 228, 44 S. W. 667, 44 L. R. A. 474; Miles v. City of Worcester, 154 Mass. 511, 28 N. E. 676, 13 L. R. A. 841, 26 Am. St. Rep. 264; 2 Wood on Nuisances, § 748; Mayor of Cumberland v. Willison, 50 Md. 138, page 160, 33 Am. Rep. 304; Winona v. Botzet, 169 F. 321, 94 C. C. A. 563, 23 L. R. A. (N. S.) 204; Cogswell v. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701; Baltimore City v. Fairfield Imp. Co., 87 Md. 352, 39 A. 1081, 40 L. R. A. 494, 67 Am. St. Rep. 344; Hines v. Rocky Mount, 162 N. C. 409, 78 S. E. 510, L. R. A. 1915C, 751, Ann. Cas. 1915A, 132; 28 Cyc. 1293.

In District of Columbia v. Tyrrell, supra, damages were sought for the injury of a workman in the basement of a school building, owing to the negligence of the District in permitting the gas pipes to remain in dangerous condition. The court held that the District, in the maintenance of schools, was exercising a governmental function, and was not liable for personal injuries caused by the negligence of its servants. The ruling opinion held that the District of Columbia could be held liable for the commission of a nuisance working injury directly to the occupant of adjacent property (citing Roth v. District of Columbia, supra), but held that the death, in the case under consideration, was not the result of a nuisance for which the defendant could be held liable. The escaping gas in the basement was not a nuisance, although it was sufficient to start an explosion that killed the workman. The court said:

"In the instant case there was no wrongful act as a result of which the gas was permitted to escape and become a nuisance to the public outside of the building, working discomfort or danger of itself."

The inevitable conclusion to be drawn from this case is that, had the gas escaped from the school building, and continued to escape after notice, to the damage of an adjacent property owner, the District would have been held liable.

In City of New Albany v. Slider, supra, the court said:

"It is argued that, in the collection of garbage and removing it from its streets and alleys, the city was exercising the authority conferred upon it by the Legislature; that in exercising such powers the city stood in the place of the state; and that, as the state assumes no responsibility in the discharge of its governmental duties, the city, as a branch department of the state, likewise assumes no liability in the discharge of such duties. This argument resolves itself into the question whether a city can create an actionable nuisance. * * * The rule seems to be well recognized that a municipal corporation is liable for torts, the same as an individual,

in certain classes of cases, among which are included nuisances. Thus in 2 Addison, Torts (Dudley & Baylies' Ed.) p. 1315, it is said: 'A municipal corporation has no more right to maintain a nuisance than an individual would have, and for a nuisance maintained upon its property, the same liability attaches against a city, as to an individual.' This rule was recognized as correct in Haag v. Board, etc., 60 Ind. 511. See 2 Hilliard, Torts, 4th Ed. 387, 388; Stein v. City of Lafayette, 6 Ind. App. 414; City of Valparaiso v. Moffit, 12 Ind. App. 250."

In Clayton v. City of Henderson, 103 Ky. 228, 44 S. W. 667, 44 L. R. A. 474, the following statement of the rule is made:

"It is further contended on behalf of the city of Henderson that, even if the act of 1886 was not repealed, the city cannot be held liable, because the act does not make the corporation responsible, but only the officers who shall violate its provisions, and further because the act complained of, being forbidden by statute, was beyond the scope of the powers of the municipality, was ultra vires, and therefore imposed no liability upon the corporation. But in the contention that the act imposed no responsibility upon the corporation, the common-law liability for establishing a nuisance which inflicts special damages upon an individual is overlooked; and as it is not necessary that the word 'nuisance' should be used in the pleading, but only that facts be stated which show the existence of a nuisance and the damage resultant therefrom, we think a cause of action has been stated against the city. 'A pesthouse, erected by town, municipality or county authorities near the premises of another, injuring the health of his family or exposing them to contagious disease, is a nuisance for which an action will lie, and in the case of a county against the board of officers erecting it.' Wood's Law of Nuisances (2d Ed.) § 66. And in Haag v. Vandenburgh County, 60 Ind. 511, 28 Am. Rep. 654, suit was brought against the board of commissioners of the county, which was held to be, in lawful contemplation, the county, and the court held that it was a well-recognized rule that municipal corporations are liable for torts in certain classes of cases, including nuisances, in the same manner as natural persons, referring to 2 Hilliard on Torts, p. 273, Shear. & Red. on Negligence, § 120, and 2 Dillon's Municipal Corporations, p. 766."

The following quotation from Miles v. City of Worcester, 154 Mass. 511, 28 N. E. 676, 13 L. R. A. 841, 26 Am. St. Rep. 264, sustains the proposition that a municipality is liable for damages arising from a nuisance committed by it:

"It is obvious that the defendant's wall, in its present position upon the plaintiff's land, must be deemed an actionable nuisance, unless the defendant can claim exemption from responsibility on some special ground. * * * Defendant suggests that it is not liable, because the wall was built and maintained solely for the public use, and with the sole view to the general benefit and under the requirement of general laws, and that the case cannot be distinguished in principle from the line of cases beginning with Hill v. Boston, 122 Mass. 344, and ending with Howard v. Worcester, 153 Mass. 426. We are not aware, however, that it has ever been held that a private nuisance to property can be justified or excused on that ground. The verdict shows a continuous occupation of the plaintiff's land by the encroachment of the defendant's wall. The question of negligence in the building of the wall is not material. The erection was completed and was accepted by the defendant, and is now in the defendant's sole charge, and if it is a nuisance the defendant is responsible. * * * Such an occupation of the plaintiff's land cannot be excused, for the reasons assigned. A city cannot enlarge its school grounds by taking in the land of an adjoining owner by means of a wall or fence. The public use and the general benefit will not justify such a nuisance to the property of another. If more land is needed, it must be taken in the regular way, and compensation paid, but if, by the action of the elements or otherwise, without the plaintiff's fault, the defendant's wall comes upon the plaintiff's land and continues there, it becomes a nuisance, for which the defendant is responsible, and so are the authorities. Gorham v. Gross, 125 Mass. 232, 239; Khron v. Brock, 144 Mass. 516; Eastman v. Meredith, 36 N. H. 284, 296; Hay v. Cohoes Co., 2 Comst. 159; Tremain v. Cohoes Co., 2 Comst. 163; Weet v. Brockport, 16 N. Y. 161, 172, note; St. Peter v. Denison, 58 N. Y. 416, 421; Mayor & City Council of Cumberland v. Willison, 50 Md. 138; Harper v. Milwaukee, 30 Wis. 365; Pumpelly v. Green Bay Co., 13 Wall. 166, 181; Dillon, Mun. Corp. § 985."

Long v. Elberton, 109 Ga. 28, 34 S. E. 333, 46 L. R. A. 428, 77 Am. St. Rep. 363, contains the following statement of the law pertinent to the case at bar:

"While the authorities have a right to use and maintain it [a prison] for the purposes intended, the duty rests upon them to maintain it in a proper manner, and if such main-

tenance after its erection should prove a nuisance, it is the right of any citizen of Elberton, or other person interested, either to abate the same, or, if special and particular damage is caused to him, to obtain proper compensation for his injury." 2 Wood on Nuisances, § 748.

In Mayor of Cumberland v. Willison, 50 Md. 138, 33 Am. Rep. 304, Judge Alvey, in delivering the opinion of the court, said:

"While an act of the Legislature may be perfectly valid simply as an authority for doing acts of a certain character generally, it does not necessarily follow that particular individuals should be made to suffer all the consequences that may result from doing any particular act of the denomination authorized by the statute. A statute may authorize the making of grades and drains for the benefit and improvement of the town, and to that extent be perfectly valid; yet if, by making a particular grade or drain, the private property of an individual is flooded and rendered useless, or is thereby seriously injured, the silence of the statute upon the subject can offer no reason why he should not be compensated. In such case it is not to be presumed that the Legislature intended that the statute should be made to operate to the detriment, it may be to the ruin, of the citizen. The power delegated should be exercised with due respect to the rights of private property [cases]; and if the municipal corporation invades those rights, though it be acting under a general power derived from the Legislature, it should be made to respond in damages in like manner and to the same extent that an individual would be liable for a similar injury—that is to say, for the actual damage sustained."

In Winona v. Botzet, 169 F. 321, 94 C. C. A. 563, 23 L. R. A. (N. S.) 204, in an opinion by Judge Sanborn, citing Pine City v. Munch, 42 Minn. 342, 44 N. W. 197, 6 L. R. A. 763, and Hill v. Mayer, 139 N. Y. 495, 34 N. E. 1090, the following clear statement of law of the case is found:

"But counsel contend that the city is not liable to pay damages for the injuries inflicted by the whistle, because, in locating it and blowing it, it was exercising one of its governmental powers in the establishment and maintenance of its fire department and fire alarm system, and this upon the ground that for the acts and omissions of its officers and agents in the exercise of a governmental power of this nature it is, like the state, exempt from civil liability. There is more than one answer to this argument. In the first place, if the blast of the whistle which caused the injuries had been made in the exercise of the city's power to protect against fires, it would not have been exempt from liability, because the blowing of the whistle was a public nuisance, and it was not necessary for the city to create or to continue that nuisance in order to rightly exercise its power to establish and maintain a fire department. It could have exercised that power as completely and as beneficially without locating or blowing this whistle daily within 110 feet of this bridge. If the exercise of a legislative power does not necessarily and naturally create a nuisance, but that results from the manner of exercising the power, the legislative grant is no defense to an action for the damages it causes."

It is needless to quote more extensively from the opinions in the cases cited. The principle of law that a municipality, though performing a governmental function, which commits a nuisance in connection with the performance of the same, is liable in damages to an injured adjacent landowner, is sustained, we think, by the great weight of authority.

[5] Appellee's case does not rest upon the theory of negligence on the part of the officers of the District of Columbia, but upon the commission of a nuisance by them. There is a distinction between classes of negligence and of nuisance or consequential damage. Joyce, Law of Nuisances, par. 18; Hauck v. Pipe Line Co., 153 Pa. 366, 26 A. 644, 20 L. R. A. 642, 34 Am. St. Rep. 710. A nuisance may not, necessarily, grow out of acts of negligence, but may be the result of skillfully directed efforts—efforts which may be skillfully directed towards accomplishing the desired end, but which may not have due regard for the rights of others.

[6] We are next concerned with the question as to whether the acts, charged in the declaration and shown by the evidence, constitute actionable nuisance. Ordinarily an action will not lie for damages for a public nuisance. It is therefore urged that in cases like the one at bar the nuisance must be shown to have been a private one.

[7] While some fine distinctions have been made between a private nuisance and a public nuisance and a mixed nuisance, it is settled that what may have been a private nuisance to plaintiff may also have been a private nuisance to his neighbor similarly situated. A private nuisance may still be so regarded, even though it develops that it affects a number of individuals. Willcox v.

Hines, 100 Tenn. 538, 45 S. W. 781, 66 Am. St. Rep. 761. Where the acts which create a public nuisance cause also private and special injury to an individual, an action at law will lie. Walker v. Shepardson, 2 Wis. 384, 60 Am. Dec. 423; Wesson v. Iron Co., 13 Allen (Mass.) 95, 90 Am. Dec. 181; Aldrich v. Wetmore, 52 Minn. 164, 53 N. W. 1072.

[8] The authorities define a nuisance as follows: "A nuisance is anything that works or causes injury, damage, hurt, inconvenience, annoyance, or discomfort to one in the legitimate enjoyment of his reasonable rights of person or property," and "may exist not only by reason of doing an act, but also by omitting to perform a duty." Joyce on Nuisances, p. 2; North Shore St. Ry. Co. v. Payne, 192 Ill. 239, 61 N. E. 467; 3 Blackstone's Comm. 215.

In Baltimore & Pot. R. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 S. Ct. 719, 27 L. Ed. 739, actionable nuisance is defined as that which renders the ordinary use and occupation by a person of his property uncomfortable to him. Funk & Wagnalls New Standard Dictionary defines a nuisance as "that which annoys, vexes, or irritates; something offensive or troublesome; an annoyance; a source of annoyance, harm or trouble; anything that by its use or by its permitted existence works annoyance, harm, inconvenience, or damage to another."

[9] While the calling of a thing a nuisance does not make it a nuisance, it seems clear to us that under the foregoing definitions of an actionable nuisance and applying the numerous decisions of the courts on the question, the allegation in the declaration, charged the commission of an actionable private nuisance, and the evidence adduced at the trial, abundantly warranted the finding of the jury that there had been a nuisance committed by the District of Columbia, which had damaged appellee in the use and enjoyment of his lands.

[10] In our view of the case, it makes no difference whether, in the fine technicalities of the law, the nuisance would be declared to be a private one or a public one. A municipality has no right to create or maintain a nuisance, and if it does so act, to the damage of an adjacent property owner, an action at law will lie for him, even if others may also sustain injury from the same source. Weet v. Brockport, 16 N. Y. 161, 172, note.

The judgment is affirmed, with costs.

Affirmed.

MARTIN, Chief Justice, dissents.