## ROLLOW v. OGDEN CITY

No. 4320.   Decided Feb. 5, 1926.   (243 P. 791.)

1. MUNICIPAL CORPORATIONS—DOCTRINE OF RESPONDEAT SUPERIOR IN-
APPLICABLE TO ACT IN GOVERNMENTAL CAPACITY. Where munici-
palities act in governmental capacity, doctrine of respondeat
superior does not apply unless negligence complained of relates
to maintenance of nuisance. [1]

2. MUNICIPAL CORPORATIONS—DOCTRINE OF RESPONDEAT SUPERIOR IN-
APPLICABLE TO MUNICIPALITY IN OPERATING FIRE DEPARTMENT.
Municipality, in operating and maintaining fire department, dis-
charges governmental functions; and hence doctrine of re-
spondeat superior is inapplicable.

3. AUTOMOBILES—CITY HELD NOT LIABLE FOR NEGLIGENCE OF DRIVER
OF FIRE TRUCK INJURING PEDESTRIAN. Truck *held* operated in
discharge of duties pertaining to city fire department while be-
ing taken to central station to be available in case of fire
call, and hence city was not liable for injury to pedestrian,
even though driver was negligent.

4. AUTOMOBILES—STATUTES AND ORDINANCES REGULATING SPEED DO
NOT CONTROL MUNICIPAL FIRE APPARATUS. Neither statute nor

---

[1] *Gillmor* v. *Salt Lake City*, 89 P. 714, 32 Utah, 180, 12 L. R. A.
(N. S.) 537, 13 Ann. Cas. 1016; *Sehy* v. *Salt Lake City*, 126 P. 691,
41 Utah, 535, 42 L. R. A. (N. S.) 915; *Alder* v. *Salt Lake City*,
231 P. 1102, 64 Utah, 568.

city ordinance regulating speed of vehicles driven on highways and public streets controls municipality in operating fire apparatus used in its fire department.

5. AUTOMOBILES—STATUTE REGULATING SPEED NOT ASSUMED TO APPLY TO FIRE APPARATUS UNLESS INTENTION CLEARLY MANIFESTED Where city exercises governmental functions in operating fire apparatus, statute passed to regulate speed of vehicles generally will not be assumed intended to apply to operation of fire apparatus unless intention is clearly manifested.

6. MUNICIPAL CORPORATIONS. City, in locating and opening streets and regulating travel, exercises discretionary power.

7. MUNICIPAL CORPORATIONS. Cities must maintain streets in reasonably safe condition for travel, and are liable for injuries due to negligent failure to do so.

8. MUNICIPAL CORPORATIONS—DOCTRINE OF RESPONDEAT SUPERIOR APPLICABLE TO FAILURE TO MAINTAIN STREETS. Doctrine of respondeat superior is applicable, where cities fail to exercise reasonable care and diligence in maintaining public streets and highways.

9. AUTOMOBILES—WHETHER CITY WAS NEGLIGENT IN PERMITTING MOVABLE STREET MARKER, STRUCK BY FIRE TRUCK, AND WHETHER CONDITION WAS PROXIMATE CAUSE OF PEDESTRIAN'S INJURIES BY TRUCK, HELD FOR JURY. In pedestrian's action for injuries when struck by fire truck out of control due to striking a loose street marker, whether city was negligent in permitting marker to become movable, and whether such condition ought to have been known to city, and whether that was proximate cause of collision and resulting injuries, *held* for jury.

10. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE OF PEDESTRIAN INJURED BY FIRE TRUCK HELD FOR JURY. In pedestrian's action for injuries when struck by fire truck out of control after striking loose street marker, plaintiff's contributory negligence *held* for jury.

11. NEGLIGENCE—"PROXIMATE CAUSE OF INJURY" DEFINED. "Proximate cause of an injury" is primary moving cause without which it would not have been inflicted, but which, in natural and probable sequence of events and without intervention of any new or independent cause, produces injury.

12. NEGLIGENCE—PROXIMATE CAUSE OF INJURY QUESTION FOR JURY. Ordinarily, question of proximate cause is one of fact for jury and not of law for court. [2]

Appeal from District Court, Second District, Weber County; *J. N. Kimball*, Judge.

Action by Alvin J. Rollow against Ogden City. From a judgment of dismissal, plaintiff appeals.

REVERSED and REMANDED, with directions.

*Chez & Douglas*, of Ogden, for appellant.

*T. J. Maginnis* and *L. J. Holther*, both of Ogden, for respondent.

FRICK, J.

The plaintiff instituted this action in the district court of Weber county against the defendant to recover damages for personal injuries which plaintiff alleges he sustained through the negligence of the defendant. In his complaint plaintiff in substance alleged: That on the 24th day of August, 1924, the defendant, a municipal corporation, maintained and operated a duly equipped fire department; that on that day the employees of the defendant who were employed in said fire department negligently and carelessly and at a great and unlawful rate of speed operated one of

---

[2] *Shafer* v. *Keeley Ice Cream Co.*, 234 P. 300, 38 A. L. R. 1523.
Corpus Juris-Cyc. References.

[1] Municipal Corporations 28 Cyc. pp. 1257 n. 6; 1293 n. 42; 1304 n. 72.

[2-5] Municipal Corporations 28 Cyc. p. 1304 n. 72.

[6-8] Municipal Corporations 28 Cyc. pp. 850 n. 72 New; 955 n. 97 New: 1275 n. 77; 1359 n. 50.

[9-10] Municipal Corporations 28 Cyc. pp. 1502 n. 35; 1509 n. 66; 1510 n. 71.

[11] Negligence 29 Cyc. p. 488 n. 29: Proximate Cause 32 Cyc. p. 745 n. 70.

[12] Negligence 29 Cyc. p. 639 n. 4.

the fire trucks used in said fire department on one of the principal streets of defendant, and carelessly and recklessly ran said fire truck against and over plaintiff while he was lawfully traveling on said street at an intersection thereof, and by reason of the collision aforesaid plaintiff sustained serious, painful, and permanent injuries. It was also alleged that the street in question at said intersection was in a defective condition, describing the same. The manner in which the fire truck was driven, the purpose for which it was driven on the street at the time aforesaid, the speed at which it was driven, and the facts leading up to the collision and the character of the injuries, together with certain sections of the ordinances of defendant, were all fully set forth in the complaint.

A demurrer to the complaint was interposed by the defendant, which was overruled. The defendant then filed its answer, in which it also set forth the facts concerning the driving of the fire truck at the time of the accident, the purpose for which it was so driven, and that the defendant maintained the fire department in its governmental capacity. It also made proper averments respecting the alleged defect in the street, denied the alleged negligence, and set up contributory negligence on the part of plaintiff as a defense.

Upon substantially the foregoing issues the case proceeded to trial. The plaintiff, in substance, proved: That the defendant, pursuant to the statutes of this state, maintained a duly equipped fire department composed of a central station with several substations; that the central station was located on Grant avenue about one block south of the intersection where the accident occurred; that substation No. 3 is located on Washington avenue and Ninth street, some considerable distance north of the intersection in question; that in case of a fire call, when the fire trucks are taken out from the central station in response to such a call, other trucks are at once taken from some other station to the central station so that the central station would always be supplied with a fire truck or trucks in case of another fire call; that on the day in question the fire apparatus was taken from the central station in response to a fire call, and the

truck in question here was, at the time, being driven from
what is designated as substation No. 3 to the central station
for the purpose just stated; that the defendant, several years
prior to the date of the accident, placed what is called a
cement 'marker'' or ''button'' in the center of the inter-
section aforesaid; that in placing the said marker defendant
had caused a ''hole'' or excavation to be made in the center
of said intersection, in which said marker was ''anchored''
or placed; that the hole or excavation, was several inches
deep, and the marker was about 12 inches in diameter and
the top of which was globular in form and extended 3½
or 4 inches above the surface of the street when in its proper
place; that when said marker was originally placed in the
intersection it was fastened or anchored in said hole or
depression and it was intended to remain stationary; that
for a long time prior to the accident—some witnesses placed
the time as several years—the marker had become loose and
at times was lifted or forced from the hole or depression,
and was ''floating'' around on the surface of the inter-
section; that at the time of the accident the fire truck in
question here was being driven from substation No. 3 to
station No. 1 so as to be in readiness for another fire call
should there happen to be one; that in approaching the
intersection in question and in passing over it the truck was
being driven at a rate of speed of from 40 to 45 miles an
hour; that in passing over the intersection the truck was
being driven a little to the left of the center of the street
although there was ample space to pass to the right of the
center; that in passing over the intersection the marker or
button aforesaid was out of place, and was some 6 or more
feet distant from and to the left of the place where it should
have been in the center of the intersection; that in passing
over the intersection the right front wheel of the fire truck
went into the hole or depression where the marker should
have been, and immediately thereafter the left front wheel
of the truck struck the marker, which was several feet from
and to the left of the hole; that by reason of the right
front wheel going into the hole or depression in the street
and the left front wheel immediately thereafter striking and

passing over the loose marker the truck was caused to sway violently from side to side to the extent, the witnesses who saw the accident say, that the driver lost control of the truck; that at that time the plaintiff was passing from the right to the left side of the intersection and had passed beyond the center of the street when the truck swayed to the left and struck him, causing the injuries in question. It is also made to appear that the plaintiff saw the truck approaching the crossing for some distance, but that because of its great speed and violent swaying he was unable to get out of its way. We have limited the foregoing statement to the facts deemed necessary to this decision, and have omitted many others although material to a final trial of the case.

At the conclusion of plaintiff's evidence the defendant interposed a motion for a nonsuit, which was granted by the court. A judgment dismissing the action followed, from which the plaintiff appeals and assigns error upon the ruling of the court granting the motion for nonsuit and in entering the judgment of dismissal.

We have carefully read the evidence produced by the plaintiff, and have examined the record of the proceedings in the court below, with a view to ascertaining upon what ground or theory that court proceeded in granting the nonsuit. Not having been able to discover any specific reason from any statement appearing in the record, we must assume that the nonsuit was granted upon the ground that the defendant justifies the granting thereof in this court, namely, that the defendant is not liable for the negligent acts of its employees who serve in its fire department while such employees are engaged in the performance of any duty coming within the scope of such department, or for acts incidental thereto. It is more convenient for us to first consider defendant's contentions in support of the court's ruling and judgment.

The defendant contends that in maintaining and operating its fire department it performs governmental rather than merely corporate functions, and for that reason the doctrine of respondeat superior does not apply to the acts of the men employed in its fire department. In support of its con-

tention, among others, defendant cites and relies upon the
following authorities: *Aldrich* v. *Youngstown,* 140 N. E.
164, 106 Ohio St. 342, 27 A. L. R. 1497; *O'Daly* v. *City of
Louisville,* 162 S. W. 79, 156 Ky. 815, 49 L.R. A. (N. S.)
1119; *Gaetjens* v. *City of New York,* 116 N. Y. S. 759, 132
App. Div. 394; *Higgins* v. *City of Superior,* 114 N. W. 490,
134 Wis. 264, 13 L. R. A. (N. S.) 994; *Engel* v. *City of
Milwaukee,* 149 N. W. 141, 158 Wis. 480; *O'Connell* v.
*Merchant's Police Dist. Tel. Co.,* 180 S. W. 845, 167 Ky.
468, L. R. A. 1916C, 508; *Bowling Green* v. *Rogers,* 134 S.
W. 921, 142 Ky. 558, 34 L. R. A. (N. S.) 461; *Smith,
Adm'r,* v. *Commissioners of Sewerage of Louisville,* 143 S.
W. 3, 146 Ky. 562, 38 L. R. A. (N. S.) 151; *Edson* v. *City
of Olathe,* 105 P. 521, 107 P. 538; *Gillespie* v. *City of Lin-
coln,* 52 N. W. 811, 35 Neb. 34; *Gregg* v. *Hatcher,* 125 S.
W. 1007, 94 Ark. 54, 27 L. R. A. (N. S.) 138, 21 Ann. Cas.
982. A large number of cases in which it is held that in
maintaining and operating fire departments cities discharge
governmental functions, and that in the absence of an ex-
press statute to the contrary they are not liable for the
negligent acts of the men employed in such departments, are
collated in 9 A. L. R. 143, and in 33 A. L. R. 688, to which
cases we especially refer the reader. This court is com-
mitted to the doctrine that in discharging certain duties        1
municipalities act in a governmental capacity and hence
are immune against actions for negligence unless the negli-
gence complained of relates to the maintenance of a nuisance.
In other words, it is held that, where municipalities act in a
governmental capacity, the doctrine of respondeat superior,
within the limits just stated, does not apply. See *Gillmor*
v. *Salt Lake City,* 89 P. 714, 32 Utah, 180, 12 L. R. A. (N.
S.) 537, 13 Ann. Cas. 1016. The foregoing case is followed
in *Sehy* v. *Salt Lake City,* 126 P. 691, 42 L. R. A. (N. S.)
915, 41 Utah, 535, and again in the recent case of *Alder* v.
*Salt Lake City,* 231 P. 1102, 64 Utah, 568. We shall not
devote further time or space to a review of the cases herein-
before cited. In passing, we desire to state, however, that
in our judgment the prevailing state of the law, together

with the weight of authority, is correctly reflected by the annotator in his notes found in 9 A. L. R. 143, supra, in the following words:

"The overwhelming weight of authority is to the effect that a fire department, maintained by a municipal corporation, belongs to the public or governmental branch of the municipality so as to relieve it, at least in the absence of statutory provision to the contrary, from liability for injuries to person or property resulting from malfeasance or nonfeasance connected with the maintenance and operation thereof."

Upon the other hand, the plaintiff contends that, although it were conceded that in maintaining and operating its fire department the defendant discharged governmental duties, nevertheless, under the more modern decisions, it would be held liable for the acts of the driver in driving the truck in the manner disclosed by the evidence. In support of his contention he refers to the following, among other, cases: *Jones v. Sioux City*, 170 N. W. 445, 185 Iowa, 1178, 10 A. R. L. 474; *Opocensky v. City of South Omaha*, 163 N. W. 325, 101 Neb. 336, L. R. A. 1917E, 1170; *Johnston v. City* of Chicago, 101 N. E. 960, 258 Ill. 494, 45 L. R. A. (N. S.) 1167, Ann. Cas. 1914B, 339; *Maxwell v. City of Miami*, 100 So. 147, 87 Fla. 107, 33 A. L. R. 682; *Creps v. City of Columbia*, 89 S. E. 316, 104 S. C. 371; *Walters v. City of Carthage*, 153 N. W. 881, 36 S. D. 11; *City of Austin v. Schlagel* (Tex. Com. App.) 257 S. W. 238; *Fowler v. City of Cleveland*, 126 N. E. 72, 100 Ohio St. 158, 9 A. L.R. 131; *Martin v. Board of Fire Comm'rs*, 61 So. 197, 132 La. 188, 44 L. R. A. (N. S.) 68; *Bowden v. Kansas City*, 77 P. 573, 69 Kan. 587, 66 L. R. A. 181, 105 Am. St. Rep. 187, 1 Ann. Cas. 955.

Without going into an extended review of the foregoing cases, it must suffice to say that they are all distinguishable both from the case at bar as well as from the cases hereinbefore cited in support of the defendant's contention. Several of the cases are based upon express statutory provisions, while in others the facts are entirely different from those that control the case at bar. Again, the case of *Fowler v. City of Cleveland*, which is a case directly in point of favor

of plaintiff's contention, has nevertheless been expressly overruled by a later case decided by the same court, namely, the case of *Aldrich* v. *Youngstown*, supra. Nor is plaintiff's contention that the case of *Gillespie* v. *City of Lincoln*, supra, has been overruled by the later case of *Opocensky* v. *City of South Omaha*, supra, tenable. After the Gillespie Case was decided the Legislature of Nebraska amended the statute so that fire trucks could not be operated upon the streets of cities at a speed greater than that specified in the statute, except when the fire department was responding to a fire call in case of "emergency demanding excessive speed." It was held in the later Nebraska case that the fire apparatus causing the alleged injuries was being operated upon the streets for the mere purpose of training horses and not in response to any fire or emergency call, and hence it was held that the case did not come within the doctrine announced in the Gillespie Case. It is not necessary, however, to pursue the cases further. We are clearly of the opinion that, in view of the overwhelming weight of authority, the defendant in operating and maintaining its fire department discharges governmental functions, and hence the doctrine of respondeat superior has no application. We are also of the opinion that the truck causing the injuries in question at the time in question was being operated in the discharge of duties pertaining to the fire department of the defendant, and for that reason the defendant cannot be held liable for any of the acts of the driver which resulted in the injuries complained of, even though it were found that the driver was negligent in driving and managing the truck. We are further of the opinion that neither the statute nor the city ordinances regulating the speed of vehicles driven on the highways and public streets have any application to this case. Both the statute and the ordinances relate to the use of vehicles generally, and, in our judgment, were not intended to regulate or control the defendant in operating the trucks and fire apparatus used in its fire department. Where, as here, a municipality exercises governmental functions in operating fire apparatus, and a statute is passed for the purpose of regulating the speed of vehicles generally, it will

2-5

not be assumed that the regulation was intended to apply to the operation of such fire apparatus unless such intention is couched in express terms or is manifested by necessary or unavoidable implication. Fire trucks are used for a special purpose only, and are not used or intended to be used upon the streets or highways for either pleasure or business purposes, and hence do not come within the designation of ordinary vehicles. In the more recent Nebraska case, as we have seen, the statute in express terms regulated the speed of fire apparatus and permitted their operation at excessive speed only in cases of emergency.

This brings us to the question of the defective condition of the street intersection where the accident occurred. As we have seen, plaintiff alleged that the defendant was negligent in permitting the marker or button, which it had placed in the center of the intersection, to be removed from the excavation in which it was originally placed and to become a movable or floating object and obstacle in the street. In answer to plaintiff's contention in that regard, the defendant insists that in placing the marker it acted within its police or governmental powers and hence is not liable. Let it be assumed that in placing the marker in the center of the street intersection as a ''silent policeman'' the defendant acted entirely within the police powers conferred upon it. The placing of the marker in the street as a part of the exercise of its police power did not authorize the defendant to permit the same to become an obstruction or an obstacle to the safe and convenient use of the street. Nothing is more clearly or better settled than that in locating and opening streets and in regulating travel thereon within the limits of incorporated cities and towns they exercise a discretionary power. It is, however, equally well settled that in maintaining the public streets and highways within the limits of such cities and towns a positive legal duty is imposed to maintain them in a reasonably safe condition for travel. In other words, cities and towns are required to exercise reasonable care and diligence in maintaining the public streets and highways within their corporate limits in a reasonably safe condition for travel, and that

in case any injury and damage results to any one lawfully using such streets or highways for travel, which injury and damage arise by reason of the negligence of any such city or town in not maintaining such streets or highways in a reasonably safe condition for travel, such city or town is liable to the injured person for the damages sustained by reason of the negligence aforesaid, and further, that the doctrine of respondeat superior applies in such cases.

In view of the undisputed facts in this case relative to the condition of the marker or button in the intersection in question at the time of the accident, can it be asserted as a matter of law that the defendant is not liable in this action? There can be no doubt whatever that if the city had driven one of its automobiles, on some business of the city, over the intersection in question, and by reason of the excavation and the loose or floating condition of the marker, such automobile had been deflected from its course, and to a certain extent the driver had lost con-   **6-8** trol over it, by reason of which the automobile came into collision with another automobile or with any one lawfully walking on or using the street, which collision resulted in injury and damage, the city would be liable for such damage, and that the doctrine of respondeat superior would apply, and, moreover, that the city would be liable for the negligent acts, if any, of the driver of the automobile. In this case, however, in view that the driver of the fire truck was a fireman, in the discharge of his duties as such, his negligence in driving or managing the truck is not imputable to the defendant. If, however, it were found that the defective condition of the street was due to the negligence of the defendant, and it were further found that it was the proximate cause of the injury and damage sustained by the plaintiff, then the result might be different. That such is the law is clearly pointed out by the Supreme Court of Iowa in *Jones* v. *Sioux City,* 170 N. W. 445, 185 Iowa, 1178, 10 A. L. R. 474, to which case reference has already been made. Such has also been held to be the law in a number of other cases hereinbefore cited where the question was involved. In passing upon the

question now under consideration, the Supreme Court of Iowa, in the case referred to, says:

"Appellant contends that, even though the act in question was governmental, the concurrent negligence in permitting the defective condition of the street should have been submitted to the jury. Under the evidence heretofore referred to, we think the court should have submitted to the jury the issue as to the defective condition of the street. The duty of the city with reference to its streets is a corporate duty"—citing a large number of cases.

The questions, therefore, whether the defendant was guilty of negligence in permitting the marker to become loose and movable, and to be shoved from place to place on the intersection, whether that condition was or ought to have been known to defendant, whether that was the proximate cause of the collision and resulting injury, should have been submitted to the jury for determination. That is also true respecting plaintiff's alleged contributory negligence.

In making the foregoing statement, we are not unmindful of the fact that the defendant contends that, even though it were conceded that the condition in which the marker was left constituted negligence, it nevertheless was not the proximate cause of the collision and consequent injury and damage. What in law constitutes proximate cause is perhaps as tersely and as clearly stated in *Winona* v. *Botzet*, 169 F. 329, 94 C. C. A. 570, 23 L. R. A. (N. S.) 204, as it well could be. We therefore take the liberty of quoting what is there said as follows:

"The proximate cause of an injury is the primary moving cause without which it would not have been inflicted, but which, in the natural and probable sequence of events, and without the intervention of any new or independent cause, produces the injury."

It is apparent, therefore, that ordinarily the question of proximate cause is one of fact for the jury and not one of law for the court. That such is the law has repeatedly been held by this court, and is again illustrated and applied in the recent case of *Shafer* v. *Keeley Ice Cream Co.* (Utah) 234 P. 300, 38 A. L. R. 1523.

From the foregoing, it necessarily follows that the district court did not err in holding that in operating and maintain-

ing its fire department the defendant exercised governmental functions, and that the doctrine of respondeat superior does not apply. It, however, also follows that the district court erred in withdrawing from the jury the other question herein discussed and to which the doctrine of respondeat superior does apply.

The judgment is therefore reversed and the cause is remanded to the district court of Weber county, with directions to grant plaintiff a new trial and to proceed with the case in accordance with the views herein expressed. Plaintiff to recover costs on appeal.

GIDEON, THURMAN, CHERRY, and STRAUP, JJ., concur.