265 P.2d 415

**DAVIS v. PROVO CITY CORP. et al.**

No. 7905.

Supreme Court of Utah.

Dec. 31, 1953.

Jackson B. Howard, Provo, for appellant.

Aldrich & Bullock, Provo, Ray, Quinney & Nebekar, Albert R. Bowen, Salt Lake City, for respondents.

McDONOUGH, Justice.

This case is presented to us on appeal from a lower court's judgment dismissing the action on the pleadings as to respondents Provo City Corporation and Brigham Young University.

Plaintiff is a child eleven years old, who was injured while coasting on a roadway on property owned by the Brigham Young University. Provo City had designated the area as a coasting area, published notice of this designation in the local paper, and had

erected saw horse barriers across the bottom of the sloping roadway. Plaintiff, allegedly unable to stop at the barrier because of the momentum gained in coasting down the hill, went under the saw horse and out into Eight North Street, colliding with an automobile driven by defendant Robert S. Clark.

The question here is whether the complaint states a claim upon which relief may be granted with respect to each of the respondents upon the grounds of (1) negligence in maintaining the coasting area and (2) maintaining an attractive nuisance.

The pleadings do not evidence the means by which the city took control of the roadway to convert it into a play area for children, nor are there allegations that Brigham Young University retained any control over the roadway. It is to be assumed, therefore, that the traffic of the university was as much prohibited from entering the roadway as other traffic. The question as to the University, then, is whether a landowner in the absence of possession of the property can be held liable for dangerous conditions existing and maintained upon such property.

In the Restatement of Torts, § 356, the general concept in such circumstances is summarized: "Except as stated in secs. 357–362, a lessor of land is not liable for bodily harm caused to his lessee or others upon the land with the consent of the lessee or a sublessee by any dangerous condition whether natural or artificial which existed when the lessee took possession." Further, the lease may be created by words or other conduct expressing consent to the lessee's possession. Section 355(a). The only applicable exception listed is at sec. 359: "A lessor who leases land for a purpose which involves the admission of a large number of persons as patrons of his lessee, is subject to liability for bodily harm caused to them by an artificial condition existing when the lessee took possession, if the lessor (a) knew or should have known of the condition and realized or should have realized the unreasonable risk to them involved therein, and (b) had reason to expect that the lessee would admit his patrons before the land was put in reasonably safe condition for their reception." This doctrine is applicable irrespective of whether such person pays for his admission or is admitted free of charge, sec. 359(c), and irrespective of whether the lease is for rent or other valuable consideration or is a free gift, sec. 359(d).

If an artificial condition can be said to have existed by reason of the location of the sawhorse barriers and the publicity attendant upon the opening of the way for sledding, that condition did not exist at the time the University relinquished control to the city. The University was under no duty to supervise the precautions taken by the city to make the area safe for its particular purposes and hence cannot be held liable for a failure to so supervise. Under the doctrine of nuisance or attrac-

tive nuisance, the landowner cannot be held for a condition created after it relinquished control. Lucas v. Brown, 8 Cir., 82 F.2d 361. The land as it was delivered to the city was in its natural state and no latent defect in the property caused the injury. The dismissal of the action as to the University was proper and will be affirmed.

A more difficult question is presented in relation to Provo City. The doctrine of governmental immunity has been accepted by the majority of states [1] as covering the actions of a municipality when the city acts as an agent of the state. According to this general rule of immunity, if the function is a public or governmental one, the municipality is not responsible for the negli-gence of its officers or employees in respect thereof,[2] and the rule of respondeat superior has no application. 38 Am.Jur., Municipal Corporations, p. 261, § 572. This rule has been accepted in this jurisdiction,[3] despite many considerations of the injustices which may be wrought in a particular case by exempting the municipality from liability.[4]

The question of whether or not the doctrine of immunity from suit when the city is acting in its governmental capacity should be discarded entirely has been considered by this court several times with the majority concluding that the matter was properly within the province of the legislature.[5] There are valid reasons for pro-

1. Florida holds that the doctrine of respondeat superior applies regardless of the type of activity engaged in by the city. City of West Palm Beach v. Grimmett, 102 Fla. 680, 136 So. 320, 137 So. 385; Wolfe v. City of Miami, 103 Fla. 774, 134 So. 539, 137 So. 892; City of Tallahassee v. Kaufman, 87 Fla. 119, 100 So. 150.

South Carolina has held that in the absence of statute, a municipality is not liable for tort in any event. Irvine v. Town of Greenwood, 89 S.C. 511, 72 S. E. 228, 36 L.R.A.,N.S., 363.

All other states, with many variations, make a distinction between governmental and proprietary activities in relation to torts committed by a municipality.

2. For a discussion of the basis of the doctrine see: Hoggard v. City of Richmond, 172 Va. 145, 200 S.E. 610, 120 A.L.R. 1376; 23 Mich.L.Rev. 325; 46 Harvard L.Rev. 305; Prosser on Torts, p. 1063 ff., sec. 108.

3. Sehy v. Salt Lake City, 41 Utah 535, 126 P. 691, 42 L.R.A.,N.S., 915; Gill-mor v. Salt Lake City, 32 Utah 180, 89 P. 714, 12 L.R.A.,N.S., 537; Rollow v. Ogden City, 66 Utah 475, 243 P. 791; and cases cited infra Note 4.

4. See Justice Wolfe's dissent in Bingham v. Board of Education of Ogden City, Utah, 1950, 223 P.2d 432; his concurrences in Niblock v. Salt Lake City, 100. Utah 573, 111 P.2d 800 and Husband v. Salt Lake City, 92 Utah 449, 69 P.2d 491.

5. "While law writers, editors and judges have criticized and disapproved the foregoing doctrine of governmental immunity as illogical and unjust, the weight of precedent of decided cases supports the general rule and we prefer not to disregard a principle so well established without statutory authority." Bingham v. Board of Education of Ogden City, Utah, 223 P.2d 432, 435. In Niblock v. Salt Lake City, 100 Utah 573, 111 P.2d 800, 804, Justice Wolfe stated:

"In the case of Husband v. Salt Lake City, 92 Utah 449, 69 P.2d 491, I ex-

tecting the municipality from vexatious and groundless suits; the doctrine of immunity in absence of statute is ancient and well-established in our law; and limits of liability can be imposed by the legislature where we are powerless to do so. For these reasons we believe that the doctrine must be enforced until the time when the legislature takes action providing for the bringing of suits not encompassed in U.C.A. 1953, 10–7–77.

▆ This court has steadfastly followed the majority rule in requiring that the city respond in damages when the city is negligent when acting in a proprietary capacity, but exempting it when the city is negligent in performance of governmental duties. The question thus becomes whether the city of Provo in designating the roadway as a coasting area and in providing certain safeguards was acting in a governmental or proprietary capacity. The test adopted in this jurisdiction in Alder v. Salt Lake City, 64 Utah 568, 231 P. 1102, 1103 is: " * * * whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be lia-

bility." As applied in that case, the court found the city not answerable for the collapse of a tier of seats erected in a public park. Further, while averring that the test is not whether a city is engaged in a profit-making venture, the court held that the maintenance of a swimming pool charging admission fees was not a governmental function in Burton v. Salt Lake City, 69 Utah 186, 253 P. 443, 51 A.L.R. 364 and in Griffin v. Salt Lake City, 111 Utah 94, 176 P.2d 156. It is not the operation of a swimming pool which makes the function non-governmental but the fact that the enterprise was in competition with private business and one which could likely be operated as successfully in private ownership as in municipal ownership. 38 Am.Jur., Mun.Corp., p. 269, § 575, Prosser on Torts, p. 1071, § 108. If a public swimming pool were operated in connection with a public park without charge, this court has not decided whether it would fall within governmental activities promoting the health and welfare of the general public. Griffin v. Salt Lake City, supra.

▆ The great weight of judicial authority [6] is that the maintenance of facilities for

pressed the opinion that municipal immunity for the negligence of its employees had been extended too far. The doctrine cannot be defended in any case on ethical grounds. The state should set the example by responding in damages for injury caused by the negligence of its servants while they are about its business. * * * Realistically speaking, the state should be free from the

vexatious suits based on fictitious grounds which might spring into abundance were the immunity removed. Therefore, the matter of lifting immunity is, perhaps, properly the matter of legislation. But it behooves the courts judicially not to extend the doctrine."

6. For citations of majority and minority views, see Alder v. Salt Lake City, 64 Utah 568, 571, 231 P. 1102, 1103.

recreation is a public and governmental function, inasmuch as parks and playgrounds are generally not operated by private corporations and there appears to have developed some duty on the part of the city to provide for parks and playgrounds. The operation of a free coasting hill is in the same category as any other recreational facility. Steele v. City of Boston, 128 Mass. 583; Burford v. City of Grand Rapids, 53 Mich. 98, 18 N.W. 571. There is no competition with privately-owned business, such a play area is generally operated only by the city, and the operation results in no benefit, pecuniary or otherwise, to the municipal corporation as such but is for the use of the general public.

Thus, under these views, Provo City is not liable for negligence which may have occurred while it was in the performance of a governmental function, the operation of a recreation area.

■■ Counsel for appellant has argued the doctrine of attractive nuisance. There are indications in our law that the doctrine may be applied to cities. Brown v. Salt Lake City, 33 Utah 222, 93 P. 570, 14 L.R.A.,N.S., 619,[7] Charvoz v. Salt Lake City, 42 Utah 455, 131 P. 901, 45 L.R.A., N.S., 652.[8] However, that doctrine merely sets a standard of care towards trespassers incumbent upon a possessor of property in the use of such property. He has a duty to take safety precautions where, by reason of its attractiveness, he has notice that children will come upon his property in proximity to a dangerous condition or instrumentality. In the instant case, children entering upon the property held by the city were invitees, according to the pleadings, and hence application of the doctrine is unnecessary for the standard of care is already set by the actual notice that children will use the premises.

■ Some courts have held that the city does not have the power to create a public nuisance and if it does so, it is acting outside the realm of governmental immunity and may be held liable. District of Columbia v. Totten, 55 App.D.C. 312, 5 F.2d 374, 40 A.L.R. 1461; Harper v. City of Topeka, 92 Kan. 11, 139 P. 1018, 51 L.R.A., N.S., 1032; Bernstein v. City of Milwaukee, 158 Wis. 576, 149 N.W. 382, L.R.A. 1915C, 435.[9] The difficulty of determining when the negligence of the city's servants becomes so outrageous as to amount to a nuisance has led the courts to some surpris-

7. In this case, the supplying of water for irrigation purposes was held to be a proprietary function; hence the city would be liable for negligence wherever a violation of a duty is found. It does not determine that the attractive nuisance doctrine would take the case beyond the purview of immunity.

8. In this case, the court did not consider the relationship of the doctrine of immunity inasmuch as there was no support for the contention of attractive nuisance.

9. For a discussion of the possible bases of this exception see Prosser on Torts, p. 1074, § 108.

ing conclusions. It was held that the erection of a diving board over shallow water in a public pool is a nuisance in Hoffman v. City of Bristol, 113 Conn. 386, 155 A. 499, 75 A.L.R. 1191, and conversely, in the case of Selden v. City of Cuyahoga Falls, 132 Ohio St. 223, 6 N.E.2d 976, it was held that such a diving board was not a nuisance although perhaps negligence. In the case of Melker v. City of New York, 190 N.Y. 481, 83 N.E. 565, 16 L.R.A., N.S., 621 a fireworks display was held not to constitute a nuisance; but where the proper precautions were not taken to avoid injury to citizens, the same court held that a fireworks display was a nuisance. Speir v. City of Brooklyn, 139 N.Y. 6, 34 N.E. 727, 21 L.R.A. 641. In the case of Husband v. Salt Lake City, supra, Justice Hanson presented a definition of nuisance, which was not approved by the majority of the court, so broad as to include a sprinkling truck in the performance of its duties. Because of this confusion in the law of public nuisance, this court announced in Bingham v. Board of Education of Ogden City, supra:

> "The legislature has not imposed responsibility upon them [governmental agencies] and this court cannot adopt a refined distinction between two torts, one sounding in mere negligence and one sounding in aggravated negligence and by such a judicial construction relieve the school board in one instance and impose liability in the other.

> "* * * under our constitution, the power to make departments of the state respond in damages for torts rests with the legislature, and without legislative enactment we are unable to impose any liability or obligation upon school districts."

If we adhere to the principle that legislative action is required to make an arm of the state responsible for damage caused by negligence of servants, it is unsound to attempt to distinguish further instances where the city may be liable even though it is acting in a governmental capacity.

If we were to accept the nuisance exception, the public would be called upon to defend every personal injury negligence action and the law of nuisance would be further confused by attempts to force a coverage of the individual case. For these reasons, the judgment of the trial court will be affirmed. Costs to respondents.

HENRIOD, and WADE, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. While I advocated in my dissenting opinion in Bingham v. Board of Education of Ogden City, Utah, 223 P.2d 432, that we should disregard the principle of governmental immunity against actions arising out of the negligent acts of governmental servants and agents, the majority of the court was not willing to take that action. I am now of the same opinion as I was then. But recognizing that the law of this state is otherwise, I, in deference thereto, concur.

CROCKETT, Justice (concurring).

I concur, but I deem it advisable to note that it is my opinion that a city is not necessarily protected against suit in all instances, even where the function is governmental. Respected authorities have recognized that where a static condition of extreme danger is knowingly permitted to persist, that the city may be held liable. Illustrative of this is the case of Wiggins v. City of Ft. Worth[1] where the municipality was held responsible for keeping wild animals in a public park in such circumstances that an animal might reach and injure visitors, and the case of Hoffman v. City of Bristol[2] where the city maintained a diving board over shallow water in a public swimming pool without any warning or indication of danger. It is easy to imagine other circumstances of such a hazardous nature being allowed to continue that gross injustice might exist if no redress were permitted.

While I am in accord with the decision here, that the fact situation does not come under the exception set out in such cases, and that our doctrine of governmental immunity from suits for negligence is so ingrained in our law that any change should be legislative, yet I believe that the authorities just referred to are well reasoned and that they are not in conflict with the decision in the instant case. And this is said despite the language used in Bingham

v. Board of Education of Ogden City which seems somewhat broader than required by the fact situation there involved.

---

1. Tex.Civ.App., 299 S.W. 468, affirmed Tex.Com.App., 5 S.W.2d 761.

