### EVERS *v.* WEIL *et al.*

(*Supreme Court, General Term, First Department.* December 31, 1891.)

**1. LANDLORD AND TENANT—DEFECTIVE PREMISES—NOTICE TO AGENT.**

Notice of the dangerous condition of a stairway in a tenement-house, to a person collecting the rents of the house, while in the discharge of his duties, is constructive notice of such condition to the landlord, so as to charge him with liability for personal injuries caused by a failure to repair the stairway.

**2. SAME—EXCESSIVE DAMAGES.**

In an action against a landlord for injuries caused by a fall down a defective stairway, it appeared that plaintiff was a boy about five years old; had previously sustained a rupture, which was cured at the time of the fall, but reappeared after the fall; that the rupture was an "incomplete hernia," not serious in a boy of his age, and one which would improve in time, and no very great amount of pain and suffering was shown to have followed the accident. *Held,* that a verdict for $5,000 damages was excessive, and that a new trial should be granted, unless plaintiff should stipulate to reduce the verdict to the sum of $1,500.

**3. SAME—IMMATERIAL EVIDENCE.**

The court properly excluded a memorandum made by a witness as to the condition of plaintiff when he was taken to the hospital for the rupture; the object of the memorandum being merely to show where to send the patient, and there being no testimony given by the witness to show the correctness of the memorandum, and nothing to show that the memorandum could have been of the slightest importance to plaintiff if it had been permitted to be read.

**4. SAME—PREDISPOSITION TO HERNIA—EVIDENCE.**

The court properly charged that the reappearance of the hernia in the boy was of no consequence with respect to defendant's liability, whether there was a predisposition to it or not; such predisposition being a circumstance proper to be considered only in ascertaining the extent of plaintiff's damages.

Appeal from circuit court, New York county.

Action by John Evers, Jr., by guardian, against Jonas Weil and another, to recover damages for personal injuries. From a judgment for plaintiff, defendants appeal. Affirmed on condition that plaintiff consent to reduction of damages.

Argued before VAN BRUNT, P. J., and BARRETT and DANIELS, JJ.
*Horwitz & Hershfield*, for appellants. *Jacob Fromme*, for respondent.

DANIELS, J. The respondent, who was born on the 20th of December, 1884, was injured by a fall on a stairway in a tenement building, occupied by his parents and others, on the 5th of October, 1889. The family were tenants of this building from the month of October, 1885, and another family occupied the same floor as tenants. The stairs upon which the accident took place were used in common by the occupants of the building, and previous to the occurrence in controversy they were covered with oil-cloth and rubber; and at the place where the plaintiff encountered his fall the oil-cloth and rubber are testified to have been worn through or broken, and the nails used to secure it are stated to have been sticking up; and the evidence tended to prove the fact to be that the fall of the plaintiff was caused by this condition of the covering of the stairs. The witnesses who were examined on behalf of the plaintiff, and whose attention had been directed to this condition of the stair covering, testified that this had been the condition of the stairs for several months prior to the time when this accident occurred. It was also stated by the witnesses that a Mr. Klien was so far in the supervision of the property as that he acted for the defendants in the collection of rents, and evidence was given to the effect that his attention had been directed to this condition of the stairs, and that he had promised that it should be repaired. The plaintiff's mother testified further that she stated to Mr. Klien, when he was there for the rent in September, that she herself had fallen down the stairs, and hurt her leg, and if he did not fix the stairs some other person might break his neck there; and he responded that it would be done soon. The objection was taken that notice to Mr. Klien, who in this manner represented the defendants in the building, was not sufficient to charge them, even if the evidence was correctly given, with carelessness in permitting the stairs to remain in this condition. But from the fact that he appeared to be authorized to collect the rents from the tenants, and was in and about the building frequently, it could be very well inferred that he was the defendants' representative in the oversight and care of the building; and notice to him, if he was so in charge of the building, while in the discharge of these duties, was constructive notice, at least, to the defendants of the condition of the stairway. On their part evidence was also given to the effect that the stair covering had not been worn or broken through in this manner, but that it was in a safe and secure condition at the time when this occurrence took place; but this evidence was not so controlling as to require the fact to be withheld from the consideration of the jury. It was for them, as the evidence on both sides had been given, to determine who was right as to the condition of this stairway, and the superintending authority of Mr. Klien as the representative of the defendants. And, to find the verdict which they did, they must have been satisfied with the truthfulness of the case as it was presented on behalf of the plaintiff, and that these stairs had been in this condition for five or six months, or near that time, as the plaintiff's witnesses described it was, prior to the occurrence of this accident. The case, therefore, was not in a condition in which it could be withheld from the consideration of the jury.

It appeared by the evidence that this child, in what is called a "fit of crying" in the early period of his infancy, sustained a rupture on the left side, and that his father, before his birth, had encountered a similar calamity; and the effect of the medical testimony was that this would increase the probability of the child inheriting that weakness. But this rupture was shown to have been cured prior to the accident by the application of a truss, and that at the time of the accident, he was not suffering from any difficulty of that description, but that, after the accident, he was found to have been ruptured on the right side,—that is, that there was a projection indicating that the

intestine had passed through what the doctors described a ring; and that a truss was applied to this rupture after the accident, which the plaintiff continued to wear to the time of the trial. But from the evidence of the medical witnesses it is clear that this was not considered by them to be a permanent disability, but one which would be cured by the application of the truss, or, if that was not successful, then by a surgical operation, which it was considered by Dr. Lesser should not be performed until the plaintiff was a few years older. But by its performance the conclusion of the witness evidently was that this rupture was capable of being healed. And the physician who was sworn on behalf of the defendants was equally as definite in his conclusions. On this subject Dr. Gibney testified that "the ring itself, or the canal, or the ring through which the hernia comes, was the same size as I made out on the opposite side, but the abdominal walls themselves were packed somewhat above this point, and allowed this mass to protrude just a little. It is what we call an 'incomplete hernia.' The condition in which I found the boy was such as sufficient to warrant me in saying that it would improve in time. I should think he would get well. An incomplete hernia is less serious than a complete hernia. Such a hernia as this boy suffers from is of frequent occurrence in children of his age, and they get cured of it." And the plaintiff does not appear to have sustained any other serious injury than that which was described by the witnesses as a rupture, and, with a person of his age, a few years, according to the uncontradicted evidence of the witnesses, would probably suffice for healing this rupture. No very great amount of pain or suffering is shown to have followed the occurrence of the accident, but by their verdict the jury awarded the plaintiff the sum of $5,000, and upon that, as one of the grounds for the motion, an application was made to set aside this verdict. From the description and consequences of the injury this amount was entirely disproportioned to the suffering and disability imposed upon the plaintiff by this fall. A verdict of $5,000 was entirely unwarranted by this proof; and, where that appears to be the result, there it is not only the practice, but the duty, of the court, to set it aside, or to provide for so far reducing it as to render it conformable to the evidence. A reference to the cases mainly bearing upon this subject is contained in the opinion of the presiding judge in *Coppins* v. *Railroad Co.*, 48 Hun, 292, and the conclusion which was there adopted was followed in *Lockwood* v. *Railway Co.*, (Com. Pl. N. Y.) 7 N. Y. Supp. 663; *Hickinbottom* v. *Railroad Co.*, 15 N. Y. St. Rep. 11; *Buck* v. *Webb,* (Sup.) 11 N. Y. Supp. 617.

An exception was taken to the exclusion of a memorandum contained in a book, and made on the 27th of January, 1885, by the witness Egan, as to the condition of the plaintiff when he was taken to the Hospital for the Ruptured and Crippled. The witness stated that he had no remembrance of the case whatever, and did not remember when the plaintiff and his mother visited the hospital, but that this memorandum was made by him in his own handwriting, and was the original entry, and the object of making it was to know where to send the patient. The court excluded the memorandum, and to that the defendants' counsel excepted. But, inasmuch as there was no testimony given by the witness as to the correctness of the memorandum, the court on that ground was justified in excluding it. *McCormick* v. *Railroad Co.*, 49 N. Y. 303, 315. It cannot in any view be held that the court erred in this conclusion, for it does not appear by the case what the memorandum was, or that it would have been of the slighest importance to the defendants if the court had permitted it to be read. The probabilities are that it would not have been of any service whatever as evidence, for the reason that the condition of this boy on each of the occasions when he was ruptured do not seem to have been the subject of any serious controversy upon the trial.

An exception was also taken, and has been urged upon the attention of the court as a ground for a new trial, to the direction in the charge that the re-

appearance of a hernia in the boy was of no consequence in the case on the simple question of liability, whether there was a predisposition to it or not. In this direction the court was clearly right, for the predisposition inherited by the boy to this result could have no effect whatever upon the simple question of liability. The only effect which could be attributed to it and considered in the case was as to the amount of damages the plaintiff should recover if the action could be maintained; and as to that the direction of the court was wholly inapplicable. It was directed solely to the question of liability, and upon that question this predisposition, if it existed, could have no possible effect. Indeed, there were no exceptions in the case that can be of any possible service to the defendants, for it was entirely proper to receive the evidence of the mother of the plaintiff as to the conversation between herself and Klien, in which she described her own fall as a consequence of the unsafe condition of the stairs. But, as the verdict of the jury was out of all proper proportion to the compensation the plaintiff was entitled to recover for the injury received by him, it should be set aside, and the judgment and order, for that reason, should be reversed, and a new trial directed on payment by the defendants of the costs and disbursements of the trial within 20 days after the service of the order to be entered on the decision, with costs to the defendants to abide the event, unless within the same time the plaintiff shall stipulate to reduce the verdict to the sum of $1,500; and, in case of the service of such a stipulation, then the judgment and the order, to that extent, should be affirmed.

VAN BRUNT, P. J., concurs.

BARRETT, J. I concur, but I think Mr. Justice DANIELS unnecessarily minimizes the testimony as to Klien's agency. It is true that when the conversation between the plaintiff's mother and Klien was admitted the proof of Klien's agency was slight. But subsequently Klien himself was called as a witness, and he testified as follows: "I frequently went into that house, 421, in 1889, to collect the rent; sometimes to look for repairing, and reporting it to the owners. It was my duty to look after repairs, and report to the owners. Whenever I found anything to report, I reported it to the owners." This certainly cured any difficulty with regard to the testimony previously given. I agree, however, that the damages were excessive, and that there should be a new trial unless the plaintiff chooses to stipulate as indicated in Mr. Justice DANIEL'S opinion.