## DAVIS v. STANDARD OIL CO. OF INDIANA et al.
### No. 8905.

Circuit Court of Appeals, Eighth Circuit.
Feb. 13, 1931.

Rehearing Denied March 18, 1931.

O. C. Mosman, of Kansas City, Mo. (Burrus & Burrus, of Independence, Mo., and Mosman, Rogers & Buzard and Clay C. Rogers, all of Kansas City, Mo., on the brief), for appellant.

William B. Bostian, of Kansas City, Mo. (R. R. Brewster, of Kansas City, Mo., on the brief), for appellees.

Before STONE and BOOTH, Circuit Judges, and DEWEY, District Judge.

BOOTH, Circuit Judge.

This is an appeal from a judgment dismissing an action for want of prosecution after plaintiff had declined to proceed further in the action; his motion to remand the case to the state court having been denied.

The action was for damages on account of personal injuries, and was commenced in the state circuit court of Grundy county, Mo., against the Standard Oil Company of Indiana and its foreman, Charles Street.

It appeared without dispute that the plaintiff was a citizen and resident of Jackson county, Mo.; that defendant Standard Oil Company was a corporation organized under the laws of the state of Indiana, and was a citizen and resident of that state and not of Missouri; that said company had places of business and did business both in Grundy county and Jackson county, Mo.;

that defendant Street was a citizen and resident of Jackson county, Mo.

The alleged cause of action arose out of an accident while plaintiff was in the employ of defendant company in Jackson county.

The short facts alleged as to the happening of the accident are as follows: Defendant company was engaged in certain construction work in Jackson county, and defendant Street was foreman on the job. Plaintiff was employed under Street in transporting mortar in a wheelbarrow from a mortar box to the place of construction where bricklayers were working. Between the mortar box and the place of construction was a fire wall two feet high. A permanent runway or scaffold led over the fire wall. Between the end of the permanent part of the runway and the mortar box loose boards were placed; the ground having been more or less cut up by trucks. Over the ends of the loose boards where they met was placed a steel plate. The mortar was carried in wheelbarrows along this pathway of loose boards onto the permanent part of the runway and over the fire wall to the place of construction. At the point where the loose board which was partly on the permanent part of the runway and partly on the ground met the next loose board which was wholly on the ground, there was apparently a turn in the pathway of boards leading to the mortar box, and at this turn was one of the steel plates. As the plaintiff was pushing his wheelbarrow of mortar along the pathway and about to go upon the permanent part of the runway, his wheelbarrow hit the steel plate, and this in some way caused one of the loose boards to slip or shift position, and plaintiff was thrown and injured.

The allegations of negligence in the complaint are as follows:

"The defendants had negligently and carelessly constructed and maintained said scaffold, platform or runway in that said scaffold, platform or runway was loose and insecure and was not safely and securely fastened and was likely to slip or shunt to one side when used by plaintiff and other workmen.

"The defendants, with knowledge on their part of said loose, unfastened, insecure, dangerous and defective condition of said scaffold, platform or runway negligently and carelessly ordered, commanded and directed plaintiff to use said scaffold, platform or runway when they knew, or by the exercise of due care on their part should have known

that said scaffold was unfastened, loose, insecure and unsafe and that plaintiff was likely to be injured thereby while he was using and working upon same.

"The defendants negligently and carelessly assured plaintiff that said scaffold, platform or runway was safe for use by him when defendants knew or by the exercise of due care on their part should have known that said scaffold, platform or runway was not reasonably safe because of the aforementioned conditions thereof.

"The defendants negligently and carelessly ordered and directed plaintiff to hurry with his work of wheeling wheelbarrows of mortar and negligently and carelessly required plaintiff to haul in said wheelbarrow a greater load or quantity of mortar than plaintiff could haul with reasonable safety to himself, over said scaffold, platform or runway."

The complaint alleges that these several acts of negligence concurred in causing the injuries complained of.

In the state court, Street pleaded that the circuit court of Grundy county had no jurisdiction on the ground that, under the venue statutes of Missouri, the action could not be brought against him in Grundy county. Street also answered to the merits.

The plea to the jurisdiction was overruled by the state court.

Defendant Standard Oil Company removed the case to the United States court for the Western district of Missouri. The grounds of removal alleged were: First, diversity of citizenship between the defendant Standard Oil Company and plaintiff, and a separable controversy between them; second, that the acts of negligence alleged against Street were all acts of nonfeasance and not such acts of misfeasance as could make him jointly liable with defendant Standard Oil Company; third, that Street was not a real but a mere paper defendant, inasmuch as the circuit court of Grundy county had not acquired and could not acquire jurisdiction over the person of Street; fourth, that the joinder of Street was fraudulent and made for the purpose of preventing removal.

The facts claimed to constitute fraud were set out at length and consisted mainly in averments that the acts of negligence charged against Street were false and known by plaintiff to be false.

Plaintiff filed a motion to remand, denying the allegations of the petition for removal.

There were thus presented to the trial court four questions: First, whether the complaint showed on its face that plaintiff attempted to state a joint cause of action against the Standard Oil Company and Street; second, whether Street was a real defendant in the case; third, whether the facts stated in the complaint could, as a matter of law, constitute a joint cause of action against the two defendants; fourth, whether plaintiff had in fact, though not on the face of the complaint, fraudulently joined Street as a defendant in order to prevent removal.

The fourth question involved an issue of fact. Evidence was accordingly taken thereon. The court finally denied the motion to remand, but without indicating the particular ground or grounds of the ruling.

The plaintiff declining to proceed further with the action, the court dismissed the case for want of prosecution.

The same four questions are presented on the record here as in the court below. As to the first, there is no controversy that on the face of the complaint plaintiff attempted to state a joint cause of action against both defendants, the Standard Oil Company and Street. The second question, whether Street, on the face of the record, was and is a real defendant, we think must be answered in the affirmative for several reasons:

First, at the time of the removal of the cause by the Standard Oil Company from the state circuit court for Grundy county, the plea to the jurisdiction of that court over the person of defendant Street had been overruled by that court. No exception appears to have been taken by Street to the order overruling his plea to the jurisdiction. By reason of this fact, and by reason of his answer to the merits, Street was in the state circuit court of Grundy county under a general appearance at the time of the removal.

Second, on December 6, 1926, after the removal of the cause to the federal court, Street appeared in that court and took part in the taking of testimony and in the hearing on the motion of plaintiff to remand the cause to the state court. We think this appearance was a waiver of objection to the jurisdiction of the federal court over the person of defendant Street. He had raised no issue of fraudulent joinder.

Third, after the federal court had denied the motion to remand, Street, on December 11, 1926, filed in that court an answer going to the merits. This answer of Street to the merits stood in the federal court for more than two years until January 16, 1929, when leave was granted to withdraw the answer and file a plea to the jurisdiction. This plea to the jurisdiction of the federal court was based solely on the alleged lack of jurisdiction of the state circuit court of Grundy county. This plea by Street was not brought to a hearing and was never passed upon by the federal court. It, of course, could have had no influence in procuring the order denying the petition to remand the case to the state court, inasmuch as that order was made more than two years before this plea was filed.

We think that, under all these circumstances, the general appearance of Street in the federal court is not open to question, and that he must be considered as a real defendant in the case.

The third question, whether the facts stated in the complaint could constitute a joint cause of action against both defendants, we think must also be answered in the affirmative. The answer to this question is to be determined by the state law. See McFarland v. B. F. Goodrich Rubber Company, 47 F.(2d) 44, and cases therein cited.

The alleged negligent failure to furnish a safe scaffold and runway could not form the basis of joint liability of both defendants, and this is conceded by plaintiff. But the alleged negligent order of Street to plaintiff to make use of the unsafe scaffold and runway, and the alleged negligent assurance of safety to plaintiff by Street, would either of them be an act of misfeasance, and could form the basis of joint liability of the two defendants, and especially so when considered in connection with the alleged negligence in the failure to furnish a safe scaffold and runway, and in connection with the allegation that the several acts of negligence concurred in causing the injury. This, we think, is decided by the cases of State ex rel. Hancock v. Falkenhainer, 316 Mo. 651, 291 S. W. 466; Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929; see also McFarland v. B. F. Goodrich Rubber Company, supra.

There remains to be considered the question whether plaintiff had, though not on the face of the complaint, fraudulently joined Street as a defendant for the purpose of preventing a removal. This is a question to be determined from the evidence taken. The burden of proof is upon the removing defendant, and the fraud of the plaintiff must

be proven by evidence that is clear and convincing.

The petition for removal characterizes as false the statement of fact in the complaint that defendants, with knowledge of the insecure and unsafe condition of the scaffold and runway, negligently ordered plaintiff to use the same; and the petition for removal further alleges that the falsity of said statement was known to plaintiff at the time of preparing the complaint.

An inquiry whether this statement in the complaint was false involves several subordinate inquiries: Was the scaffold and runway in fact unsafe and insecure? Was this condition of the scaffold and runway known to Street? Did Street, with knowledge of the condition of the scaffold and runway, order plaintiff to use the same.

On each of these questions the testimony was conflicting. On the question as to the condition of the scaffold and runway, the plaintiff, on direct examination, testified as follows: "Q. Was the runway weak and wiggly? A. Yes, sir"—and on cross-examination, as follows:

"Q. When you say the runway was so weak and wiggly you mean this permanent part? A. No, sir.

"Q. You do not mean the permanent part? A. No, sir.

"Q. You mean the boards that were on the ground? A. No; the part that was upon the runway.

"Q. The board that was upon the runway? That was how long? A. About sixteen feet long.

"Q. And how much of it was on the runway? A. About half of it.

"Q. So that it ran from the ground on up to the runway? A. Yes, sir.

"Q. Did it move? A. It wiggled up and down, moved up and down.

"Q. Any board that is partly on the ground and partly on the runway will wiggle up and down, that is what you mean by wiggling up and down as you wiggled a wheelbarrow over it, it went up and down? A. If the braces were not under it, the brick.

"Q. As you wheel it upon the board, if the bricks were not under it it would move up and down? A. Yes, sir.

"Q. And that is what you mean by being wiggly? A. Yes, sir.

"Q. And that is all you mean? A. It was not staked down.

"Q. I say, that is all you mean, isn't it? That is the only way it moved was up and down as you walked over it and wheeled the wheelbarrow? A. It would shove to the side as you hit it, if the steel plate would catch so it would shift it over.

"Q. If you hit it on the side you would shove it over? A. That is the way we were hauling it up, the side.

"Q. When you were on it you could not hit it on the side with your wheelbarrow? A. No, sir.

"Q. So after you got on it the only way it wiggled was by moving up and down, as you walked over it? A. Yes, sir.

"Q. And that is the only motion it made? A. While I was on it.

"Q. So the only motion it made while you were on it was an up and down motion? A. Yes, sir.

"Q. And that is the only part that was loose and wiggly? A. Both ends were loose.

"Q. You mean the end—neither end was fastened? A. No, sir."

On the questions whether Street knew the condition of the scaffold or runway and with such knowledge ordered plaintiff to use it in his work, there is the testimony of Street himself that he knew of the runway and the loose boards, and the condition of the same; and the testimony of plaintiff was as follows:

"Q. Did you ever at any time have any conversation with Mr. Street, your foreman, or get any comments or orders or directions from him about your work? A. Yes, sir, I did.

"Q. When you first went to work there what did he tell you to do? A. Showed us where the mortar box was and to mix this mortar and take it to the brick layers.

"Q. After that did he ever say anything to you about how to work? A. Yes, sir.

"Q. Where were you when he had this conversation with you? A. At the back end of the stills.

"Q. You remember about how long it was before you were injured? A. It was probably five or six days.

"Q. Tell His Honor what it was that he said to you and what you said to him? A. I told him the condition of the runway was wiggly.

"Q. What brought the conversation about? A. The brick layers were out of mortar and we could not get there fast

enough so I told him the condition of the runway.

"Q. Did he say anything to you about bringing the mortar to the brick layers to keep them going? A. Yes, sir.

"Q. What did he say? A. He told us to fill up the wheelbarrows and keep them busy.

"Q. Prior to that time had you been carrying your wheelbarrows full? A. No, sir.

"Q. He told you to fill up the wheelbarrows and keep them going? A. Yes, sir.

"Q. What then did you say to him? A. I told him the condition of the runway was so you could not wheel it over there.

"Q. What did you say, if anything? A. I said it was so wiggly and weak that you could not haul the loads over it and he told me if I could not there were men waiting for my job.

"Q. What else did he say, if anything, about the condition of the runway? A. It was all right; we had been going over it and it was all right.

"Q. He said if you did not want to do that that there were other men to do it? A. Yes, sir."

This testimony of plaintiff was corroborated by another witness. It is true that this testimony was contradicted by witnesses for defendant; but we are not called upon to determine where the truth lay in this conflict of testimony.

In the case of Farmers' Bank & Trust Co. v. Atchison, T. & S. F. Ry. Co., 25 F. (2d) 23, which involved the question whether plaintiff's intestate, at the time he was injured, was engaged in interstate commerce, this court, speaking by Judge Kenyon said at page 31: "We do not determine the question here of whether decedent was so engaged at the time of the accident. It is not necessary so to do, and, as we have before pointed out, this is not the controlling question. What we do decide is that defendant has failed to successfully carry the burden of showing that the allegations of the petition in the state court as to decedent being engaged in interstate commerce were so baseless, colorable, and false that the assertion thereof constituted a fraud on the jurisdiction of the federal court. Hence the claimed fraud on the part of plaintiff in alleging in its petition in the state court that decedent was engaged in interstate commerce has not been established."

In the case of Boyle v. Chicago, R. I. & P. Ry. Co., 42 F.(2d) 633, which also involved the question whether plaintiff, at the time he was injured, was engaged in interstate commerce, this court, speaking by Judge Stone, said at page 635: "The burden of proof is upon the defendant to clearly establish the facts as alleged in its petition for removal."

And, after examining the testimony, the court further said: "The situation is one mainly depending upon the credibility of witnesses. In this situation, the defendant has failed to sustain the burden of clear proof, and for that reason the case should be reversed, with directions to remand the case to the state court."

In the case at bar, the question whether Street negligently ordered plaintiff to use an unsafe instrumentality in his work is to be answered by determining the credibility of witnesses, and by determining whether the order which Street gave the plaintiff was a negligent order. Both of these matters are for a jury to consider and determine. In other words, the defendant Standard Oil Company has failed to sustain the burden of clear proof that plaintiff knowingly made false allegations in his complaint.

The judgment is reversed, with instruction to remand the case to the state circuit court of Grundy county.