## LUCAS v. BROWN. *
### No. 10349.

Circuit Court of Appeals, Eighth Circuit.
March 18, 1936.

*Rehearing denied April 15, 1936.

362

Thomas J. Kennedy, of Omaha, Neb. (Fred A. Wright and Wright & Kennedy, all of Omaha, Neb., on the brief), for appellant.

G. L. DeLacy, of Omaha, Neb. (Kennedy, Holland, DeLacy & Svoboda, of Omaha, Neb., on the brief), for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellee Samuel R. Brown of Hollywood, Cal., is the owner of a large brick house at No. 2501 Farnam street in Omaha, Neb., known as the Brown House. For several years prior to July 1, 1931, the premises had been leased to one Mrs. Kemp, who in turn, in July, 1928, subleased the entire building to one William Sheeley and his wife. The sublessees remained in possession until July 1, 1931, paying to Mrs. Kemp a monthly rental of $60. Some time prior to July, 1931, Mrs. Kemp advised the lessor she would discontinue her tenancy. She collected the rent for June from Sheeley and turned it over to the National Company of Omaha, which had taken over the rental of the property for the nonresident owner. Some time in June, or about the 1st of July, 1931, Mr. Arthur B. Martin, a representative of the National Company, visited Sheeley at the Brown House with reference to rerenting the property. While there Sheeley pointed out to Martin the rotted condition of a "stringer" or support to one of the steps of the stairway leading to the front porch of the building. This timber was not readily seen from the surface of the stairway. Sheeley testifies that "Mr. Martin looked at the stairs and examined them and said he would write to the owner, Mr. Brown who lived in California, and find out what he could do about fixing the steps." Mr. Martin testifies that: "On July 1, 1931, we accepted Sheeley as a lessee for the Brown House from Mrs. Kemp at a monthly rental of $65.00, $5.00 of which sum was for the rental of the garage in the rear. The July rent was paid by Sheeley on July 9th." Sheeley testifies that during all the time he rented the property he rerented the rooms in the building to various people. The house contained about seventeen rooms, in which eight or ten subtenants resided. July 1, 1931, Arthur W. Lucas rented from Sheeley three rooms on the third floor of the building. He furnished these rooms, and brought his mother, plaintiff below, to live with him. They cooked in their apartment. July 21, 1931, as the plaintiff was ascending the stairway leading to the porch for entrance to the building, the rotted support under one of the steps, to which reference has been made, gave way; the plaintiff fell and sustained injuries for which she brought suit against the owner Brown. At the close of all the evidence, counsel for defendant moved the court to instruct the jury to return a verdict in favor of defendant. The motion was sustained, judgment entered accordingly, and this appeal followed.

The trial court thought the case governed by Davis v. Manning, 98 Neb. 707, 154 N.W. 239, and the decisions of this court in Midland Oil Co. v. Thigpen, 4 F. (2d) 85, 53 A.L.R. 311, and Fraser v. Kruger et al., 298 F. 693. We adhere to the rules announced in these cases, to wit, that ordinarily the duties and liabilities of a

landlord to persons on leased premises by invitation of the tenant are the same as those owed to the tenant himself; that a subtenant, servant, employee, guest, or invitee of the tenant is so identified with the tenant himself that his right of recovery for injury as against the landlord is the same as that of the tenant, if he suffers injury; that, where there is no agreement by the landlord to repair, and he is not guilty of any fraud or concealment, by failing to disclose hidden defects of which he has knowledge, a tenant, to whom the defects, if any, are as patent as to the lessor, takes the risk of safe occupancy, and the landlord is not liable to the tenant nor to his invitees for personal injuries sustained.

The rule in Nebraska is not otherwise. Roberts v. Rogers (Neb.) 261 N.W. 354; Rankin v. Kountze Real Estate Co., 101 Neb. 174, 162 N.W. 531; Davis v. Manning, 98 Neb. 707, 154 N.W. 239.

■ Of course, where premises are leased for public or semipublic purposes, and, at the time of lease, conditions exist which render them unsafe for the purpose intended, and the landlord knows, or by the exercise of reasonable care ought to know, of these conditions, and a third person suffers injury on account thereof, the landlord is liable because the third person is upon the premises at the invitation of the landlord as well as of the tenant. Fraser v. Kruger et al., supra.

"A sub-tenant is not deemed to be one of the general public so as to have a right of action against the original landlord, when the general public's right would be greater than that of the tenant, although there is some authority to the effect that a sub-tenant may recover against the landlord for injuries resulting from a dangerous nuisance existing at the time of the letting." 36 C.J. par. 918, p. 229.

From both testimony and correspondence presented by the record the following further facts appear: After his examination of the premises in June, or about the 1st of July, 1931, Martin made report to W. E. Spear, trust officer of the First National Bank of Omaha, of which the said National Company apparently formed a department. At some date not appearing in the record Spear, in connection with other matters concerning the property in question, forwarded the Martin report to the defendant in Hollywood. July 11, 1931, defendant wrote to Spear a letter containing the following:

"I note that you are able to keep 2501 Farnam occupied. Have you already rented it, and for how much? As your letter was not clear as to whether it was rented now, or was going to be rented. If nothing has been done yet try and get more than $55.00 a month for it, but if it isn't possible I will take that figure.

"Also I note from the report Mr. Martin of the First Trust Company made on the property that the steps and porch are in dangerous condition. I think these should be repaired when the house is rerented."

To this, July 15, 1931, Spear replied: "In your letter of July 11, 1931, you inquire as to whether your property is now rented. We have a tenant on a month to month basis at $60.00 a month. Our Rental Department advises that they are attending to the repair of the steps and porch."

■ As stated, the injury to appellant occurred July 21, 1931. The stairway was not repaired before that date. We think the liability of the owner, if any, depends largely, if not entirely, upon the question of control of the premises at the time of the reletting to Sheeley. Until in June, 1931, defendant had relations only with his lessee, Mrs. Kemp. When her tenancy ceased, defendant, through his agents, sought a reletting of the premises. When the former term expires, the owner has the right of entry and the power to abate any dangerous condition that may be known to exist. Sheeley was there in full possession of the entire building as a subtenant of Mrs. Kemp. His right of possession expired with her's on July 1, 1931; but he was permitted to remain as a tenant from month to month, without actual possession being retaken by the landlord in the meantime. Defendant had been made aware, through the knowledge of his agents, and through their report, of the dangerous condition of the stairway which formed one of the necessary approaches for entrance to the building by residents thereof. At the close of the Kemp tenancy the owner regained control and recognized it. Such a situation is treated in 16 R.C.L. p. 1079, § 596: "Where the liability of the lessor depends upon the condition of the premises at the time of the lease, there is no difference between an original contract of letting and the renewal of an existing lease. Whatever the condition of the premises at the time they were originally demised, if, when the lease was renewed, a nuisance existed thereon, the renewal is deemed an au-

thorization by the lessor of the continuance of the nuisance. To hold that the liability of the landlord in such cases will be diminished by the fact that he renewed the tenant's lease without retaking actual possession would be opposed to the principles creating and governing his liability. If a nuisance is created during a term already existing, no liability falls on the landlord pending that term, for the reason that he has no legal means of abating the nuisance. He cannot enter upon the tenant's possession for that purpose, and would be a trespasser if he did so. But when the term expires, his right of entry and power to abate at once arise, and, for that reason a liability commences. If he declines to re-enter and abate the nuisance, and re-lets the premises, the liability which arose at the termination of the term will be neither discharged nor evaded. The test of his liability in such a case is his power to have remedied the wrong. If he has but fails to exercise such power, his liability remains."

And in 36 Corpus Juris, § 915, p. 226, the rule is stated generally thus: "A landlord will be liable for injuries resulting from the defective condition of the premises at the time of a renewal of a lease, irrespective of the condition of the premises at the time of the original letting."

Under the report of the case of Zolezzi v. Bruce-Brown et al., in volume 49 A.L.R. at page 1418 et seq., there is a very considerable discussion of this proposition in the appended annotation. The general rule is there stated as follows: "Generally, a landlord who leases or relets premises which at the time of such lease or re-letting are in the possession of the tenant, and on which a dangerous condition exists, is liable to one injured during the subsequent term because of this condition, notwithstanding the fact that, at the time of the original lease to the tenant in possession, the premises did not contain a dangerous condition."

▋ This text is supported by an impressive citation of decisions from many jurisdictions. A landlord will not be liable for a nuisance created or coming into existence on premises while in the possession of a tenant so long as he has no right of entry or power to abate. When the term expires, the landlord may enter, and his responsibility, if any, cannot be evaded by a renewal of the tenancy without having taken actual possession, even though the renewal be made with covenants to repair by the tenant. Ingwersen v. Rankin et al., 47

N.J.Law, 18, 54 Am.Rep. 109. Whether a landlord has a right of entry for the purpose of repairing is a question for the jury. Connors v. Newton, 77 N.J.Law, 125, 71 A. 36.

The term "nuisance" as here employed is used in its broadest sense of equivalence to a dangerous condition which may cause harm, inconvenience, or damage to another, or "which, in consequence of its position or dangerous tendency, is calculated to inflict injury upon an innocent person." McAdam on Landlord & Tenant (5th Ed.) § 293, p. 1231.

It is true that the rule of caveat emptor applies to leases of real estate, and that a lessor cannot ordinarily be held for injuries to a lessee or his subtenant where there is no concealed defect, and where the lessee knows, or has opportunity to ascertain, the condition of the premises. Here, however, is a somewhat unusual situation. A reletting is in process, with control restored to a landlord who has both actual and imputed knowledge of a dangerous condition of facilities essential to the occupancy and enjoyment of the leased premises. Sheeley, the immediate lessor of appellant, was accepted as an intermediate tenant from month to month during a period when the landlord, advised of the condition of the stairway, had assumed responsibility, and had directed the repair as an incident of the reletting in contemplation. His agents reported that they were attending to these repairs, which were in fact made, but, unfortunately, not until the injury to appellant had been suffered.

▋ It is, of course, true that where, as here, a verdict is directed, the evidence of appellant and the inferences fairly arising therefrom must be considered in a light most favorable to her cause. Tschudi v. Metropolitan Life Ins. Co. (C.C.A.8) 72 F. (2d) 306; Andrews v. United States (C.C. A.8) 63 F.(2d) 184; McNally v. United States (C.C.A.8) 52 F.(2d) 440.

As heretofore stated, the building at 2501 Farnam street contained about seventeen rooms, in which eight or ten subtenants resided. Mr. Lucas, with his mother, occupied three of these rooms which they had furnished, and in which they did their own cooking and general housekeeping. An ordinance of the city of Omaha, introduced in part upon another branch of the controversy, tends to show that a building, "occupied, or suitable for occupancy, by three or more families doing their own

cooking on the premises," is a "tenement" as therein defined. If so, it was apparently used for a semipublic purpose. It had been so used, at least during Sheeley's subtenancy, for a period of three years prior to July 1, 1931. Whether the owner, Brown, had actual knowledge of this does not appear, unless inferentially, from the record; but constructive notice is sufficient to charge the landlord (Young v. Rohrbough, 86 Neb. 279, 125 N.W. 513) and such notice was imparted through his agent Martin, who visited the premises at the time he sought a reletting to Sheeley.

"Notice of the dangerous condition of a stairway in a tenement-house, to a person collecting the rents of the house, while in the discharge of his duties, is constructive notice of such condition to the landlord, so as to charge him with liability for personal injuries caused by a failure to repair the stairway." Evers v. Weil et al., 62 Hun, 622, 17 N.Y.S. 29, affirmed 135 N.Y. 649, 32 N.E. 647.

■ Of course the landlord's duty to make repairs arises only after he has had notice, actual or constructive, of the existence of a defect and has had sufficient opportunity thereafter to make such repairs. McAdam on Landlord & Tenant (5th Ed.) § 293, p. 1231.

■ In her position appellant charged appellee with a covenant to repair as well as negligence. The record does sustain the alleged covenant which would, as a general rule, give rise merely to a right of action for breach of contract instead of for tort on which damages for personal injuries may be recovered. But we think there is sufficient evidence tending to show control in appellee of the stairway in question at the time of the accident; and that the question of the duty of appellee, if any, to repair, and the further question whether there was any actionable negligence on his part in that respect, should have been submitted to the jury; also the question of whether, under the provisions of the ordinance, the building was used for a semipublic purpose, a question which does not appear to have been urged and to have received consideration in the trial court.

■ By permitted amendment to her petition, plaintiff set forth certain provisions of the city ordinance requiring handrails on the side or sides of inclosed stairs extending from the entrance floor in certain classes of buildings. There were no hand-

rails on this stairway leading to the porch. The trial court correctly ruled that these provisions of the ordinance concerned stairways on the inside of the building, and were not applicable to the issue in the instant case. The exception taken is not pressed in this appeal.

The judgment below is reversed, and the cause remanded for further proceedings in conformity with this opinion. It is so ordered.