**JOHNSON et al. v. KURN et al.**
No. 10940.

Circuit Court of Appeals, Eighth Circuit.
March 21, 1938.

630

F. P. Sizer, C. E. Reed, and William J. B. Myres, all of Monett, Mo., for appellants.

Frank C. Mann and Mann, Mann & Miller, all of Springfield, Mo., for appellees.

Before STONE, SANBORN, and WOODROUGH, Circuit Judges.

STONE, Circuit Judge.

This is a personal injury suit brought in a state court of Missouri against the Trustees of the St. Louis-San Francisco Railway Company and Continental Oil Company. Plaintiffs are citizens of Oklahoma. The Trustees and the railway company are citizens of Missouri. The oil company is a citizen of Delaware. The oil company removed the case by a verified petition alleging facts claimed to establish separate controversy and fraudulent joinder. A motion to remand was filed and heard on affidavits and exhibits. The motion was denied. Plaintiffs refusing to plead further, the case was dismissed for want of prosecution. Plaintiffs appeal from the order of dismissal.

We are concerned here only with the propriety of the order denying the motion to remand. The contest is whether the Trustees (resident defendants) were fraudulently joined. There is no dispute as to the evidentiary facts. The issue between the parties is whether, under the undisputed facts shown in the verified petition for removal and the evidence, there could be recovery against the Trustees for the injury pleaded in the petition of plaintiffs. If there is no basis for the assertion of liability as against the resident defendants, a conclusion that they were joined fraudulently is justified.[1]

The action is for the death of a child, in 1936, which fell from a platform erected on the side of an oil storage tank. Steps led from the ground to the platform.

---

[1] Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144; Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152, 34 S.Ct. 278, 58 L.Ed. 544; Wecker v. National Enameling Co., 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430, 9 Ann.Cas. 757; and, in this Court, Huffman v. Baldwin, 8 Cir., 82 F.2d 5, 8, certiorari denied 299 U.S. 550, 57 S.Ct. 12, 81 L.Ed. 405; Morris v. E. I. Du Pont De Nemours & Co., 8 Cir., 68 F. 2d 788, 792; Cox v. Early, 8 Cir., 65 F. 2d 891, 892, and see (also in this Court) Davis v. Standard Oil Co. of Indiana, 8 Cir., 47 F.2d 48; Boyle v. Chicago, R. I. & P. Ry. Co., 8 Cir., 42 F.2d 633, 634; Farmers' Bank & Trust Co. v. Atchison, T. & S. F. Ry. Co., 8 Cir., 25 F.2d 23.

The child climbed these steps. The "attractive nuisance" doctrine is invoked and various grounds of negligence set forth.

In 1926, the railway company leased a tract of vacant land belonging to it in Poteau, Oklahoma, to the Marland Refining Company. This tract was outside of its tracks and about twenty-five feet from the nearest track. The lease was for an annual rental of $30 payable in advance. Except for certain defaults, the lease was terminable only and upon thirty days written notice by either party. The usage by lessee was restricted to "warehouse and storage tanks for oil and gasoline." The lease was to inure to the benefit and bind the "heirs, executors, administrators, successors and assigns of the parties hereto; provided, however, that this agreement and lease shall not be assigned by lessee, or said premises, or any part thereof, sublet or used or occupied by any person * * * other than lessee without the written consent of lessor first obtained therefor." The lessee was given thirty days to remove "all property of every kind and character on said premises which lessee may have the right to remove" and any property not removed within ten days thereafter was conveyed to lessor. The parties seem to have construed this provision as giving the lessee the right to remove the tanks and other structures.

The purpose of the Marland was to establish facilities to store petroleum products in bulk for distribution in smaller quantities to its customers or retail dealers in and about Poteau. The reason for establishing such facilities on this tract was to enable the Marland to facilitate the transfer of such products from tank cars. The Marland erected two large steel tanks, a warehouse, and a pumping station. These tanks had steel ladders and platforms.

September 25, 1930, the Marland executed an assignment of this lease to the Continental. The Railway consented to this assignment on November 10, 1930. Thereafter, the Continental erected another large tank upon the tract. It was a platform of this tank from which the child fell.

September 26, 1933, the above Trustees were appointed in a debtor reorganization proceeding of the Railway. August 10, 1934, the Trustees voluntarily reduced the annual rental to $15 in pursuance of a general policy to fix rentals for locations on the railway right of way at 6 per cent. of the estimated value (as estimated by them) of locations so occupied, and so notified the Continental.

There are no railway tracks on this tract. The lessor had no part in construction of any of the tanks or other structures and made no contribution to the cost or expense thereof. The tract and structures thereon have at all times been in the exclusive control and use of the Marland and, later, the Continental in the business of the lessee and its assignee of storing, selling, and distributing its petroleum products. All maintenance and repairs have been by the lessee. The lessor has had no use or control over the tract, the structures or the business transacted thereon.

◼ The first contention of appellants is that the Trustees are liable "for an attractive nuisance that has existed on their right of way for a long period of time, with their knowledge and consent, both under the common law and the statutes of the State of Oklahoma."

As to the common-law liability, appellants cite City of Shawnee v. Cheek, 41 Okl. 227, 137 P. 724, 51 L.R.A.,N.S., 672, Ann.Cas.1915C, 290, and Ramage Mining Co. v. Thomas, 172 Okl. 24, 44 P.2d 19. The Cheek and Thomas Cases have no application because no lease was involved in either. In each, the owner was in possession and control at the time of the accident. The above contention that the statutes of Oklahoma imposed such liability is based on sections 11490 and 11493, St.Okl.1931, 50 Okl.St.Ann. §§ 2, 5, and Chicago, B. & Q. R. Co. v. Willard, 220 U.S. 413, 31 S.Ct. 460, 55 L.Ed. 521. The statutes cited are not pertinent. Section 11490 defines a "public nuisance." Section 11493 is as follows: 11493. Who Liable. "Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of such property, created by a former owner, is liable therefor in the same manner as the one who first created it."

◼ This section has no application to a lessor who did not create the nuisance. The Willard Case is not helpful. There the lease was of a railway line. Under the law of Illinois (the place of the accident), a lessor railway company incorporated under the law of that state and leasing its entire property under authority of

a state statute was held suable for injuries caused by operation of the property by the lessee. This involved construction of the statute permitting leasing. The State Supreme Court had clearly held this statute did not exempt the lessor railway and that "public policy" required that "such lessor companies are to be charged with the duty of seeing that the operation of the road is committed to competent and careful hands" 220 U.S. 413, at page 423, 31 S.Ct. 460, 463, 55 L.Ed. 521.

The second contention of appellants is that the record discloses facts which show the lessor had a right of entry and could have entered and abated the existing nuisance. Before considering the facts upon which appellants so rely, it is well to state that the law is that, without a statutory or a contract duty upon the lessor, the lessor has no right to enter the leased premises even for purposes of repairing. Lucas v. Brown, 8 Cir., 82 F.2d 361, 364, quoting 16 R.C.L. 1079, § 596; 36 C.J. p. 125, § 766, note 62; p. 152, § 788, note 53; p. 155, note 90. Absent any statutory or contract duty, the lessor is not responsible for an injury resulting from a defect arising during the term of the lease. Lucas v. Brown, 8 Cir., 82 F. 2d 361, 364; Sikora v. Fellowcraft Club, 189 Mich. 235, 155 N.W. 495.

The first fact relied on to show right of entry and a claimed resulting liability is the provision of the lease permitting either party to terminate the lease upon thirty days written notice. This is not a right of entry during the life of the lease but a right to terminate the lease.

The second fact so relied on is that the lease was violated by the taking over of the property by the Continental on July 1, 1929, by transfer from the Marland although the consent to assignment of the lease was not given until November 10, 1930. It is argued that this violation gave a right of entry and, since it is pleaded that lessor then had knowledge of the nuisance, it is liable for not entering and abating. Such entry would have been a termination of the lease. The provision of the lease requiring consent to assignment was merely a covenant (Hague v. Ahrens, 3 Cir., 53 F. 58), which could be waived and a violation thereof would not affect the lease, if waived. There was no duty upon the lessor to terminate the lease

and he had no right to enter to abate the nuisance unless he terminated the lease.

The third fact so relied on is that consent to the assignment constituted a new lease or reletting; that the lessor had a right of entry and a duty to abate. The answer to this is that mere consent to an assignment of a lease does not terminate the lease and result in a new lease nor renew the lease. It is a continuation of the lease. The lease itself recognized and provided that it might be assigned. Consent was merely a condition which might be enforced or even waived. Appellants cite several authorities which are not in point. One from this court is Lucas v. Brown, 8 Cir., 82 F.2d 361. That was a case where the original tenant had, after giving notice of intention to terminate the lease, left the property and the lease expired. While a reletting was in process by the owner, a subtenant of the former lessee was accepted as "an intermediate tenant from month to month" (page 364) and the owner "had assumed responsibility, and had directed the repair as an incident of the reletting in contemplation" (page 364).

The fourth fact so relied on is that the above reduction of rental by the Trustees from $30 to $15 on August 10, 1934, was a renewal of the lease which entitled the lessor to re-entry and, therefore, put upon the lessor the duty to abate and the consequent liability for failing to abate. This act was not a renewal either in fact or law. It was a change in a term of an existing lease, the running of which was not interrupted thereby.

The fifth contention is that this lease was, under the statutes of Oklahoma, an annual lease which was renewed by the Trustees in 1934, 1935, and 1936, when they accepted the annual rental for each of these respective years. Thus, treating such acceptances of rent as renewals of the lease, appellants argue rights of entry and consequent liability. The reliance is placed on sections 10928, 10930, and 10931, St.Okl.1931, 41 Okl.St.Ann. §§ 33, 35, 36, which are as follows:

"10928. Lease Presumed to be for One Year. A lease of real property, other than lodgings, in places where there is no usage on the subject, is presumed to be for one year from its commencement, unless otherwise expressed in the lease."

"10930. Continued Possession and Payment of Rent Renews the Lease. If a lessee of real property remains in possession thereof, after the expiration of the lease and the lessor accepts rent from him, the parties are presumed to have renewed the lease on the same terms and for the same time, not exceeding one year."

"10931. Renewal of Lease Presumed Unless Notice of Termination Given. A lease of real property for a term not specified by the parties, is deemed to be renewed, as stated in the last section, at the end of the term implied by law, unless one of the parties gives notice to the other of his intention to terminate the same, at least as long before the expiration thereof as the term of the lease itself, not exceeding one month."

Section 10928 presumes a term of one year for leases only where "there is no usage on the subject" and where not "otherwise expressed in the lease." This lease clearly expresses the term to continue until thirty days after written notice by either party. Therefore, under the terms of the section and the provisions in the lease, the lease is expressly without the section.

Section 10930 deals with the single situation of a holding over by the tenant and acceptance of rent "after the expiration of the lease." This lease has not expired, therefore, this section is not applicable.

Section 10931 expressly complements section 10930 and has to do only with the same situation of an expired lease.

Another contention is that the Trustees had a reasonable time, after their appointment, to reject or adopt existing contracts (including leases); that the nuisance existed during this period of determination; that the lease was affirmed; that the failure to enter and abate the nuisance and the affirmance created a liability on the part of the Trustees. We have some difficulty in following this reasoning, but it seems to be based upon some right of entry to abate the nuisance. Such right had no existence. It is true that the Trustees did have the power (subject to control of the court) to adopt or reject the lease, but this power did not affect the continued existence of the lease during such period nor did it change its terms giving a right of entry where none had existed in the lessor debtor. An "adjudication in bankruptcy absolves from no agreement, terminates no contract, and discharges no liability." Watson v. Merrill, 8 Cir., 136 F. 359, 363, 69 L.R.A. 719. Unless the contract gives the other party a right of forfeiture upon bankruptcy, such party continues to be bound, either to the bankrupt or to the Trustees, if they adopt. Watson v. Merrill, supra, 136 F. 359, at page 363, 69 L.R.A. 719. The adoption has merely the effect of an assignment by force of law. Watson v. Merrill, supra, 136 F. 359, at page 363, 69 L.R.A. 719. Under this lease, the lessor had no right to enter to abate a nuisance created by the lessee. The Trustees succeeded to no greater right. They could adopt or reject the lease as a whole but could not alter its terms. As said by this court (Greif Bros. Cooperage Co. v. Mullinix, 8 Cir., 264 F. 391, 397): "When the trustee in bankruptcy, by order of the referee or of the court, elects to ratify, confirm, and adopt the executory contract of the bankrupt, he thereby * * * takes the contract in the same plight in which the bankrupt held it."

Having no right, much less duty, to abate the nuisance, they are not liable for failure so to do.

We can discover no merit in any of the contentions of appellants urging that the Trustees could be liable for the condition alleged to have caused the death of this child. It is clear to us that no such liability exists. In the absence of such liability, the joinder of the Trustees as defendants was, in a legal sense, fraudulent and, being such, the trial court acted rightly in denying the motion to remand.

The judgment must be, and is, affirmed.